## MARCH, 1897. 47

Vol. 69   New England R. R. Co. *v.* Central Ry. & Electric Co. et al.

THE NEW ENGLAND RAILROAD COMPANY *vs.* THE CENTRAL
RAILWAY AND ELECTRIC COMPANY ET AL.

First Judicial District, Hartford, January Term, 1897.  ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Section eight of Chap. 169 of the Public Acts of 1893, provides that no
   street railway shall thereafter be built or extended from one town to
   another "in the public highways," so as to parallel a steam railroad,
   unless the Superior Court, or a judge thereof, shall find that public
   convenience and necessity require its construction.  The defendants
   were about to build a street-railway between Hartford and New Britain
   parallel to the plaintiff's steam railroad, and intended to build nearly
   one quarter the entire distance in the public highways.  *Held* that
   such railway was one "in the public highways" within the meaning of
   the statute, and that the plaintiff was entitled, under the statute, to
   apply in its own name for an injunction to restrain the construction of
   such railway until the required judicial finding had been obtained.
The defendants proposed to build a portion of the street railway over an
   unauthorized route, and upon this ground, also, the plaintiff claimed
   an injunction.  *Held :*—
1. That unless some legal or equitable right of the plaintiff was about to be
   invaded by the threatened *ultra vires* acts of the defendants, the former
   could not be heard to complain.
2. That the franchise of the plaintiff as a common carrier was not exclusive,
   and therefore the alleged injury from the competition of a rival line,
   impaired none of the plaintiff's legal or equitable rights and afforded it
   no cause of complaint.

[Argued January 8th—decided March 23d, 1897.]

SUIT to restrain the defendants from constructing an elec-
tric railway, brought to the Superior Court in Hartford County
and tried to the court, *George W. Wheeler, J. ;* facts found and
judgment rendered for the plaintiff upon the first count, and
for the defendants upon the second count, and appeal by both
parties for alleged errors in the rulings of the court.  *No
error.*

The case is sufficiently stated in the opinion.

*Charles E. Perkins* and *Frank L. Hungerford,* for the de-
fendants.

A railway cannot be said to be built "in the public high-

ways," within the meaning of § 8 of Chap. 169 of the Public
Acts of 1893, unless it is *mainly*, *principally*, or *substantially*
in the highways. Furthermore, the statute should be strict-
ly construed against the steam railroads, as it favors a mo-
nopoly on their part as against the public in the means of
public travel. According to the finding, the total length of
the proposed route is about 34,000 feet, and from New Britain
to the Hartford town line, only about 500 feet are in the public
highways, exclusive of highway crossings, and including
those crossings, only about 1,800 feet. To hold that the
construction of such a railway offends § 8 of the street rail-
way law, is to make that section practically prohibitory upon
the building of street railways from town to town, without a
finding that it is required by public convenience and neces-
sity. The gist of the second count of the complaint is that
the proposed route from New Britain to Hartford does not
follow the charters of the defendants, or either of them.
The court below properly held upon the final hearing that
this was a matter which does not concern the New England
Railroad Company, and gave it no ground upon which to
claim an injunction. The authorities sustain this position.
*National Dock Co.* v. *Railroad Co.*, 32 N. J. Eq. 755; *Rail-
road Co.* v. *Ellerman*, 105 U. S. 166; *Norwich Co.* v. *Gas Co.*,
25 Conn. 30, 36. The damage to the plaintiff is attributable
to competition, and to that alone. But competition is not
illegal.

*Edward D. Robbins*, for the plaintiff.

The trial court has found as a fact that the contemplated
railroad is to be appreciably and substantially within the
public highways. This finding would seem to be conclusive.
Any electric railway built from town to town can easily run
for a longer or shorter distance through the fields. It would
be absurd to contend that by a slight diversion of a railroad
from the highway at some convenient point, its promoters
could successfully avade the limitations of this law. The
defendants argue that the plaintiff has no standing in court,
because a violation of a statute can only be enjoined at the

MARCH, 1897. 49

Vol. 69   New England R. R. Co. v. Central Ry. & Electric Co. et al.

suit of the State, or of some one who suffers a special in-
jury, distinct from that done to the public at large.   It will
hardly be disputed that the prohibition in § 8 was made for
the benefit of existing railroad companies whose lines would
otherwise be paralleled.   This is placed beyond doubt by the
requirement that they should be made parties to the hearing
upon the application regarding the proposed parallel line.
Under these circumstances it was not even necessary to allege
and prove the special damage.   Foster's Fed. Pr., § 207.
*St. Louis R. R.* v. *N. W. St. Louis R. R.*, 69 Mo. 65.   The
Hartford Street Railway Company was authorized in 1862,
to build in the city of Hartford.   Since then the city limits
have been extended, but this extension did not enlarge the
company's right to build.   *Com.* v. *Erie & Northeast R. R.*,
27 Pa. St. 339.   The plaintiff has sufficient standing to com-
plain of the wrongful acts of the defendants in deviating
from their authorized route.   The court below has based the
ruling appealed from by the plaintiff, on the authority of
*Railroad Co.* v. *Ellerman*, 117 U. S. 587, and other similar
cases.   It is respectfully submitted that these cases are en-
tirely inapplicable to the case at bar.   The present case
belongs to an entirely different class of cases.   From time
immemorial a certain class of franchises has been protected
by the courts from unlawful competition.   These may be
described as franchises which are coupled with duties to the
public.   Among them are included the franchises of ferries,
bridges, turnpikes, and railroads.   3 Kent's Com., p. 459.
The modern cases, decided by courts of the highest authority,
unhesitatingly apply the principles above stated concerning
ferries and bridges, to the modern railroads.   *Central R. R.* v.
*Penn. R. R.*, 31 N. J. Eq. 475, 493; *Raritan & Del. Bay R.
Co.* v. *Del. & Raritan Canal*, 18 id. 546, 569–572; *Penn. R. R.*
v. *Nat. Ry. Co.*, 23 id. 441.   The distinction elsewhere made
is also made in *Norwich Gas Light Co.* v. *Norwich City Gas
Co.*, 25 Conn. 20, 36, between ordinary private enterprises,
and those enterprises in which the owner of the franchise
comes under obligations for the benefit of the public.   The
rule which the defendants seek to apply to this case is not

one which should be favored, when it comes in conflict with other principles of law. It should rather be always scrutinizingly limited in its application, for its tendency is to secure immunity for violations of law.

TORRANCE, J. In the court below the plaintiff applied for an injunction to restrain the defendants from building the electric street railways described in the complaint, which were designed, as it was alleged, to parallel the steam railroad of the plaintiff.

The complaint contains two counts. The first asks for the injunction chiefly on the ground that the defendants propose to build said railways in the public highways, without having a finding from the Superior Court, or a judge thereof, that public convenience and necessity require their construction; while the second asks for it chiefly on the ground that the defendants propose to build said railways in part over routes other than those prescribed in their charters.

Upon the facts found, and with reference to the first count, the defendants made certain claims which the court overruled; while upon the facts found, and with reference to the second count, the plaintiff made certain claims which the court overruled. On the first count, upon the facts found, the court held that the plaintiff was entitled to an injunction as prayed for; while upon the facts found applicable to the second count, it held that the plaintiff was not entitled to an injunction, and rendered judgment accordingly. The defendants appeal from the rulings under the first count, and the plaintiff from those under the second count.

The facts found, so far as they are material to the consideration of both appeals, are the following: The plaintiff is a steam railroad company organized under the laws of this State, owning and operating a railroad carrying freight and passengers, whose main line connects the cities of Hartford and New Britain, passing through the town of Newington. It has five stations between its Hartford and New Britain stations, two of which are in Newington; and at all of which some of its trains stop. Each of the three defendants is a

street railway company organized under the laws of this State.

In March, 1896, the Central Railway and Electric Company and the Hartford Street Railway Company, two of the defendants, having secured control of the charter and management of the Newington Tramway Company, the other defendant, entered into a written agreement "for the purpose of securing the construction and operation of said Newington electric railway, in connection with their companies, as one continuous through line of railway from the center of the city of Hartford to the center of the city of New Britain. . . . The connecting pieces of railroad which these defendants are building and threaten to build will, in connection with the existing railways of said Hartford and Central companies, make one continuous railway and parallel the main line of the plaintiff from Plainville to New Britain and thence to Hartford, in all seventeen miles." Said railway, building and to be built, passes through the towns of New Britain, Newington and Hartford; and "an appreciable, that is, a substantial part" of it, is in the public highways; and that part of it to be built by each of the defendants "will be, in an appreciable degree, in the public highways." Neither of the defendants has obtained from the Superior Court, or any judge thereof, a finding that public convenience and necessity require the construction of said proposed street railway or any part thereof. "The sole purpose and object of the construction of the proposed railway is to constitute a direct street railway route from New Britain to Hartford for the carriage of passengers and packages. Said railway will, to a considerable extent, accommodate some of the inhabitants of Newington. The whole length of this proposed route from the center of Hartford to the center of New Britain is about 54,647 feet, of which about 25,232 feet are within the town of Newington. The total length of the proposed route is about 34,000 feet. The proposed railroad within the town of New Britain is 2,894 feet, and is all on private land. About 1,800 feet within the town of Newington are within the public highways, including about 1,300 feet for highway

52 MARCH, 1897.

New England R. R. Co. v. Central Ry. & Electric Co. et al.   Vol. 69

crossings.  In all, over 8,700 feet of the proposed route is to be built in the public highways, or about one fourth.  Six thousand nine hundred and seventy feet of the proposed route in the town of Hartford is to be built in the public highways."  Each of the defendants is to build one part of the proposed railway.  "Each of these parts is [to be] built to carry out said agreement and for the one purpose and no other, viz : to build and operate a through electric railway between New Britain and Hartford and the settled parts thereof.  Each of these parts is to be built under said agreement between the Hartford Company and the Central Company.  The Newington Company is, in fact, a joint possession of these companies, and all its proposed work is done, and to be done, for the benefit of these two companies and to carry out said agreement, and to effectuate the one object of these three companies, viz : to build and operate a through street railway line between New Britain and Hartford.  That part of said continuous through railroad which is to be built by the Newington Tramway Company, is to be built within the town of Newington, to the town of New Britain on the one side and to the town of Hartford on the other side, upon a route which is substantially different from the route upon which said company is authorized by its charter to construct a railroad ; " but the deviations from the charter route, specified in the finding, " were authorized by votes of the said Newington Company as being more practical and convenient than the route along the highways."  The part to be built by the Hartford Company is found, in effect, to be over a route upon which the company is not authorized by its charter to construct a railroad ; and that part to be built by the Central Company is " over a route which differs substantially from any route described in its charter."  The Hartford Company and the Central Company " intend to take part directly in the operation of said through railroad within the town of Newington, in the manner set forth in said agreement.  The building and operation of said through railroad intended to be built by the defendants, will seriously affect the plaintiff in its carriage of passengers and packages, and

will diminish its returns, while leaving its expenses substantially unaltered.   The injury resulting to the plaintiff from the competition of said through railroad will be a continuous and increasing one."

The appeal of the defendants will be first considered. The defendants in the court below, upon the facts found, claimed: (1) that the proposed railways were not to be so built or extended in the public highways as to come within the prohibition of § 8, Chap. 169 of the Public Acts of 1893 ; (2) that even if they did come within such prohibition, the plaintiff " had not sufficient interest to maintain this action " under the first count.   The court below decided against both claims, and the question upon the defendants' appeal is whether in so doing it decided correctly.

With reference to the first claim the defendants contend that the statute in question should receive a reasonable construction, to the effect that unless the parallel railway runs " mainly, principally, or substantially " in the highways, it is not within the statutory prohibition.   If the statute in question is construed so as to absolutely prohibit any street railway, which when built from one town to another will parallel an existing railroad, from occupying any portion of the public highways without the statutory finding, then the statute itself provides a definite and certain rule of action ; but if it is to be so construed as to permit some proportionate part of such " parallel " railroad line to be laid in the public highways, without such statutory finding, then the statute furnishes no certain rule, because it does not determine the extent of such proportionate part.   Under this last construction the question whether the statutory finding was necessary, would be a question to be determined from the facts and circumstances of each particular case, and it would be difficult if not impossible to lay down any definite general rule upon the subject.   In the present case we deem it unnecessary to decide as between these two constructions, or to lay down any general rule upon this subject, for we are satisfied that upon any construction of the statute the proposed railroad of the defendants comes within the statutory prohibition.   It

is true that the part of the road to be built by the Central Company is not to be in the highways at all, and that only a comparatively small proportion of that part to be built in Newington is to be in the highways; and if these railways, upon the facts found, could be regarded as separate and independent proposed railways, the question upon this part of the case, raised upon the record, would be a different one from that actually presented. But upon the facts found the proposed railroad must be regarded as one single railroad, to be built by the defendants acting in combination, for the single joint purpose of owning and operating it as a through street railway line between New Britain and Hartford; for this is the fair import of the finding upon this point. Looked at in this way, about one fourth of the proposed railroad is to be built in the public highways; and we are of opinion that the court below correctly held, under all the circumstances of this case, that the proposed railway could not legally be built without the statutory finding.

The next question is whether "any legal or equitable right of the plaintiff was invaded by the construction of the proposed railway," so as to entitle it to the injunction granted; and we are of opinion that it was entitled to such injunction. The eighth section of the statute under consideration was, we think, enacted for the protection of railroads in existence and operation against proposed roads that would "parallel" them, as well as for the benefit of the general public. It provides that "no street railway shall hereafter be built or extended from one town to any other town in the public highways, so as to parallel any other street railway or steam railroad, unless authorized by special charter prior to January 1st, 1893, until the company desiring to build, construct, or extend such railway shall have applied to the Superior Court or any judge thereof, and shall have obtained from such court or such judge, in the manner hereinafter required and provided, a finding that public convenience and necessity require the construction of such street railway." It further provides that upon such application made to the court or judge for such a finding, any steam railroad com-

pany or street railway company that may be affected by the proposed street railway or extension thereof, shall be made a party, with the right to be heard upon this matter and, by necessary implication, with all the rights of a party to such a proceeding.   We are of opinion that this statute confers upon such steam railroad companies and street railway companies, in this State, as would be affected by the construction of a " parallel " and rival street railway in the public highways, from one town to another, the right to be protected against such parallel and rival street railway, unless and until such rival has obtained the prescribed statutory finding; and that the right thus conferred carries with it by fair implication the right in the steam railroad company or street railway company that would be affected by such rival street railway company, to ask in its own name for an injunction against such rival, proposing or attempting to build or extend its railway without such statutory finding, and in a proper case made, to have the injunction issue.   Upon the defendants' appeal, then, we think there is no error.

With reference to the plaintiff's appeal, the court below found in substance that the proposed route of the street railway in question does not follow at all points the charter routes of the defendants, or either of them, but deviates therefrom more or less; that the part of the route proposed to be built by the Hartford Street Railway Company, from its present terminus to the boundary line between the towns of Hartford and Newington, it is not authorized by its charter to build; that what the three defendants were attempting to do in building the proposed street railway, was *ultra vires* as to each and all of them; but it also held, contrary to the claims of the plaintiff, that the plaintiff had no sufficient interest by reason of the above facts to have the defendants restrained by injunction from doing the proposed acts.

The sole question, then, upon the plaintiff's appeal, is whether the plaintiff had sufficient interest to maintain this suit upon this ground alone; and this depends upon whether any legal or equitable rights or interests of the plaintiff were

about to be invaded by the proposed *ultra vires* acts.   If the defendants owed to the plaintiff no legal or equitable duty to abstain from doing the acts complained of, the plaintiff is not entitled to an injunction to restrain them from doing that which does it no legal harm.   " The simplest and most generally accepted test in determining whether one is a proper party complainant to a bill for an injunction, is whether he possesses a legal or equitable interest in the subject-matter of the controversy."   High on Injunctions, § 756.   Giving to the terms " legal or equitable interest " a fairly liberal construction, this test is a reasonably safe guide.   *Town of Burlington* v. *Schwarzman*, 52 Conn. 181.   " The legal interest which qualifies a complainant other than the State itself to sue in such a case, is a pecuniary interest in preventing the defendant from doing an act where the injury alleged flows from its quality and character as a breach of some legal or equitable duty."   *Railroad Co.* v. *Ellerman*, 105 U. S. 166, 173.   The only injury, then, of which the plaintiff could be heard to complain in the court below, was an invasion of some of its legal or equitable rights ; if none of these were threatened by the acts complained of, the plaintiff was not entitled to the injunction.   Now if any right at all of the plaintiff, legal or equitable, was threatened or invaded by the *ultra vires* acts complained of, it was the claimed right to be free from the injurious competition of a rival in the business of carrying passengers and freight; and the question is whether any such legal or equitable right existed in favor of the plaintiff upon the facts set up in the second count.   Counsel for the plaintiff concedes that no such right exists in favor of the ordinary private corporation.   He says in substance that if a corporation chartered solely to do a dry goods business goes into the grocery business, and thereby ruins the trade of another corporation chartered to do a grocery business, the latter would have no redress against the *ultra vires* acts, at law or in equity.   He claims, however, that the franchise of the plaintiff is like the franchise of a public market, ferry, bridge, or turnpike road, at common law ; and as such, is entitled to the protection against a rival in its business,

which the common law gave to the owner of the franchise for a public market, ferry, bridge, or turnpike road. It is undoubtedly true that at common law the franchise of a ferry is held to be exclusive, even in cases where the words of the grant of the franchise do not import an exclusive right; and the same thing is held to be measurably true as to market, bridge and turnpike franchises. "When the crown grants a ferry from A. to B. without using any words which import it to be an exclusive ferry, why is it, (as will be presently shown) that by the common law the grant is construed to be exclusive of all other ferries between the same places, or termini; at least, if such ferries are so near that they are injurious to the first ferry, and tend to a direct diminution of its receipts? Plainly, it must be because from the nature of such a franchise it can have no permanent value, unless it is exclusive; and the circumstance that during the existence of the grant, the grantee has public burdens imposed upon him, raises the implication that nothing shall be done to the prejudice of it, while it is a subsisting franchise. The words of the grant do, indeed, import *per se* merely to confer a right of ferry between A. and B. But the common law steps in, and, *ut res magis valeat quam pereat*, expands the terms into an exclusive right; from the very nature, and objects, and motives, of the grant." STORY, J., in *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420, 620. It is also undoubtedly true that the owner or holder of a franchise which the law holds to be exclusive—as was the case at common law generally with respect to market, ferry, bridge, and turnpike road franchises—is held entitled to redress by suit in his own name and behalf, against one who injuriously interferes with or disturbs this exclusive right. See the authorities to this effect, cited and commented upon by STORY, J., in *Charles River Bridge* v. *Warren Bridge*, *supra*. In such cases at common law, in England at least, the exclusive rights under the franchise, during the existence of the grant, are protected against all injurious competition carried on with or without a license from the crown; and this is done solely on the ground that the franchise is exclusive.

But the franchise of the plaintiff is not, under our law, exclusive in any such sense.    The plaintiff has not, and does not claim to have, a monopoly, in this sense, of the business of carrying freight and passengers between Hartford and New Britain.    It cannot and does not claim, under the second count, that if the defendants had been acting *intra vires* in doing what they proposed to do, it would have been entitled to an injunction.    Any individual is at liberty to engage in the business of carrying passengers and freight between Hartford and New Britain by means of stages, omnibuses, or other similar vehicles, over the public highways; under the general railroad law a rival steam railroad may engage in the same business; and, aside from the prohibition contained in § 8 of the street railway law of 1893, hereinbefore referred to, the defendants, if acting *intra vires* in building the proposed street railway line, were at liberty to engage in the same business; and in each of these cases, although the existence of such a competitor might more or less seriously diminish the plaintiff's receipts, it would be without redress at law or in equity, because the competition would be lawful both as against the State and the plaintiff, and no right of the plaintiff legal or equitable would be invaded by such competition.

It is claimed, however, that if the plaintiff has no right to complain of authorized and lawful competition, it has the right to be protected against unlawful competition.    What is meant by an unlawful competition in this connection?    It means a competition (1) unlawful as against the State alone, without being an invasion of any legal or equitable right of the plaintiff; or (2) unlawful as against the plaintiff alone; or (3) unlawful both as against the State and the plaintiff. Clearly, the plaintiff can complain only of unlawful acts which invade some legal or equitable right belonging to it; acts which of themselves are of such a character as to constitute a breach of some legal or equitable duty imposed by law upon the defendants toward the plaintiff.    For instance, we think the law of 1893, before referred to, imposed upon the defendants, in favor of the plaintiff, the duty not to build

the proposed railway without a statutory finding that public convenience and necessity required its construction; the construction of said railway without such finding would be a violation of this duty; and the attempt to do so may be restrained by an injunction at the instance of the plaintiff. But if, in forbidding the construction of said railway line without the statutory finding, the law had imposed no duty not to build it upon the defendants, in favor of the plaintiff, the latter would not be entitled to have the defendants restrained from building it without such finding; because by such construction no legal or equitable right of the plaintiff would be invaded. If the law required a common carrier to take out a license before he could engage at all in carrying passengers and freight between Hartford and New Britain in competition with the plaintiff, and he, without a license therefor, engaged in such business and thereby diminished the plaintiff's receipts, it would hardly be claimed that the plaintiff could have an injunction against the carrier, unless the law imposing the license, expressly or by implication, conferred upon the plaintiff some interest in the matter.

The acts complained of in the second count are merely *ultra vires* acts, illegal in a certain sense as against the State, but in and of themselves invading no right, legal or equitable, of the plaintiff. Neither the plaintiff's charter, nor any law of this State, imposed a duty upon the defendants towards the plaintiff not to build a railway deviating from the chartered route, or not to build one beyond the chartered termini, or not to exercise powers and rights not granted to them. The State, or the stockholders, may restrain the defendants from exercising powers not conferred by their charters, but this does not confer any right of action in this respect upon the plaintiff, unless its own legal or equitable rights are invaded by such exercise.

There is no error in the judgment complained of.

In this opinion the other judges concurred.