HARTFORD ELECTRIC LIGHT COMPANY *v.*
MARK S. LEVITZ

LOISELLE, LONGO, ARMENTANO, RUBINOW and SPONZO, Js.

Argued December 9, 1976—decision released April 26, 1977

*Arnold W. Aronson*, for the appellant (defendant).

*Paul W. Orth*, with whom was *Bruce G. MacDermid*, for the appellee (plaintiff).

LOISELLE, J. The plaintiff, the Hartford Electric Light Company (hereinafter HELCO), sued for an injunction restraining the defendant Levitz from grading, excavating, filling or carrying on any other activity in connection with construction of a parking lot on the plaintiff's easement. The defendant counterclaimed for damages for breach of the easement agreement, alleging HELCO had arbitrarily refused to permit him to park motor vehicles within the easement. The court found for the plaintiff on the complaint and on the counterclaim and ordered that the injunction issue. The defendant has appealed.

The facts found by the trial court need no correction. The defendant claims that certain portions of the draft finding were admitted and undisputed and therefore should be added to the finding. Those portions were based on testimony by the defendant's witnesses; the mere fact that certain testimony is not directly contradicted does not render it thereby admitted or undisputed. *Levine* v. *Randolph Corporation*, 150 Conn. 232, 242, 188 A.2d 59. The defendant claims that parts of the finding were found without evidence. Although the plaintiff

printed no evidence in its appendix to support those parts, in its brief it relied on the defendant's admissions in pleading; these adequately support those parts of the finding.

The facts are as follows. HELCO is the owner of an easement on certain property in Newington and Farmington. The property burdened by this easement was purchased by the defendant, with knowledge of the easement, in 1972. The defendant planned to put a building on the property, and obtained tentative commitments from tenants. Newington zoning laws required that such a building have 220 parking spaces, which would have to be located within the HELCO easement. HELCO refused permission for the defendant to build a paved parking lot on its easement. The defendant then began constructing a parking lot, and threatened to continue. HELCO brought this action for an injunction to restrain the defendant from constructing the parking lot.

The easement granted to HELCO by the defendant's predecessor in title contained the following restrictions: "The Grantor agrees that he will not, without the written permission of the Grantee, erect any building or structure on, place or store any materials on, park any vehicles on, or grade, excavate, fill or flood said right of way, or otherwise use said right of way in any manner which, in the opinion of the Grantee, may interfere with the exercise of the rights and/or easements herein granted, or any of them, which may create a hazard."[1]

---

[1] This case must be distinguished from cases in which the plaintiff holds a bare easement and is entitled to relief only if the exercise of his rights is disturbed or obstructed, such as *Wambeck* v. *Lovetri*, 141 Conn. 558, 107 A.2d 395, and *Catania* v. *Vanacore*, 136 Conn. 244, 70 A.2d 136. Here the plaintiff had bargained for and obtained covenants restricting the owner's use of the fee.

The defendant argues that this language, although it requires him to obtain HELCO's permission to build a parking lot on the easement, must be construed to forbid HELCO from unreasonably withholding its permission. The court rejected this argument. The finding, however, reveals that the court also concluded that HELCO did not arbitrarily withhold its permission in this case. That conclusion, if supported by the finding, must stand.

The finding shows that HELCO has three lines of wooden poles and towers on the easement, with numerous guy wires. One pole has a switch; the poles and towers support one transmission line and five distribution lines. The easement is wide enough to hold another transmission line. An accidental power outage, especially an unnecessarily prolonged one, could adversely affect thousands of customers, and a substantial power outage may be not compensable in money to the plaintiff and to its affected customers. The court took judicial notice that part of HELCO's business is to prevent interruptions of service and to minimize those which occur. HELCO did not purchase its easements in expectation of policing the restrictions on the activities of fee owners. In 1951, HELCO had a standard easement agreement which differed from the agreement here only in that it did not mention parking or flooding, and stated that "The Grantor . . . will not, without the written permission of the Grantee, erect any building or structure on, place or store any flammable materials on, or grade, excavate or fill said right of way." For over twenty years HELCO has taken the position that its easements will not permit parking, and it has maintained a "no parking" policy. It had increasing problems with restricting the parking of vehicles under the "storage of flammable

materials" clause, and in 1957 changed its standard form to the one at issue here. In changing the language of the form, HELCO took a long-range view of its responsibility, as a public service company, to its customers.

The defendant, who alleged in his counterclaim that HELCO had arbitrarily refused permission for the parking lot, had the burden of proof that construction of the lot would pose no threat to HELCO's use of its easement. See *Armstrong* v. *Leverone*, 105 Conn. 464, 473, 136 A. 71. There was no finding by the court that the construction of the lot would not interfere with HELCO's easement or create a hazard. Absent such a finding, the conclusion that HELCO did not arbitrarily refuse permission is supported by the facts that the easement was actually in use, that a power outage might cause great damage, and that HELCO had bargained for and obtained a restriction against use of the easement for parking.

The court's conclusion that HELCO did not arbitrarily refuse permission, which is supported by the subordinate facts found, makes it unnecessary to discuss whether the restrictive covenant in the easement granted was a reasonable restraint on the use of property. See *Lampson Lumber Co.* v. *Caporale*, 140 Conn. 679, 683, 102 A.2d 875; 14 Williston, Contracts (3d Ed.) § 1642.

The defendant claims that HELCO is not entitled to an injunction without a showing that it is threatened by a substantial and irreparable injury. There is a long line of authority supporting the proposition that, as a general rule, irreparable and substantial injury must threaten before an injunction is warranted. A few of the many cases so holding are: *Jones* v. *Foote*, 165 Conn. 516, 338 A.2d 467;

*Crouchley* v. *Pambianchi,* 152 Conn. 224, 205 A.2d 492; *Point O'Woods Assn., Inc.* v. *Busher,* 117 Conn. 247, 167 A. 546; *Bigelow* v. *Hartford Bridge Co.,* 14 Conn. 565. These and many other similar cases have been examined, and in none of them was an injunction which was sought to enforce a restrictive covenant refused for the lack of a threat of substantial irreparable injury. Cases involving enforcement of restrictive covenants show that in those actions a different standard is applied to the request for an injunction.

In *Armstrong* v. *Leverone,* supra, this court found no error in the granting of an injunction against violation of a restrictive covenant against business use of certain property. It stated (p. 472) that "[p]roof of special damage is not necessary, and if the act of the defendant transgresses the restriction it is a violation of the rights of the plaintiffs which is not dependent upon the existence or amount of damage. Berry on Restrictions on Use of Real Property, § 413; *Morrow* v. *Hasselman,* 69 N.J. Eq. 612, 61 Atl. 369; *Peck* v. *Conway,* 119 Mass. 546." The court also held that the defendant's substantial expenditures did not make injunctive relief inequitable, because they were made with knowledge that he was violating the restrictions.

In *Hooker* v. *Alexander,* 129 Conn. 433, 29 A.2d 308, an injunction was granted restraining the defendant from violating a covenant against rooming houses. The opinion stated that the rooming house reduced neighborhood property values, but in answer to the defendant's claim that his operation of the rooming house did not damage his neighbors, the court stated (p. 437): "The question of damage is immaterial as far as the right of the plaintiffs to enforce the restrictions is concerned. *Armstrong*

v. *Leverone,* 105 Conn. 464, 472, 136 Atl. 71. It is
sufficient for the plaintiff to have a legal or equi-
table right which he is entitled to enforce. *New
England R. Co.* v. *Central Ry. & Electric Co.,* 69
Conn. 47, 56, 36 Atl. 1061." Accord, *Lampson
Lumber Co.* v. *Caporale,* supra, 685; *Bickell* v.
*Moraio,* 117 Conn. 176, 167 A. 722.

These holdings do not require issuing an injunc-
tion whenever enforcement of a restrictive covenant
is sought. An injunction is an equitable remedy, and
may be denied if the balance of the equities favors
the defendant. Thus in *Bauby* v. *Krasow,* 107 Conn.
109, 139 A. 508, this court ruled that an injunction
should not be issued to require taking down a house
when construction had been commenced in good
faith, although in violation of a restrictive covenant.
The court held that under those circumstances
money damages would be adequate. It stated
(pp. 115–16): "Whether such an injunction should
issue depends upon all the equities between the
parties. 32 Corpus Juris, 147. When one has gone
on wrongfully in a wilful invasion of another's
rights in real property, the latter is entitled to have
his property restored to its original condition even
though the wrongdoer would thereby suffer great
loss. It has been said that the result of denying
a mandatory injunction in such a case would be to
'allow the wrongdoer to compel innocent persons to
sell their rights at a valuation.' *Tucker* v. *Howard,*
128 Mass. 361, 363. Where, however, there has been
an innocent mistake or a bona fide claim of right on
the part of the defendant or laches on the part
of the plaintiff, or where the conduct of the defend-
ant was not wilful and inexcusable, and where the
granting of the injunction would cause damage to
the defendant greatly disproportionate to the injury

of which plaintiff complains and it appears that damages will adequately compensate the latter, in such cases it has been held that it would be inequitable to grant a mandatory injunction and the plaintiff has been remitted to his remedy by way of damages [citations omitted]." Although this distinction is not explicit in *Moore* v. *Serafin,* 163 Conn. 1, 301 A.2d 238, that case stands for the same proposition. It held that it was proper to refuse an injunction requiring the owner of a mausoleum, built on a burial plot in violation of a restriction against aboveground structures, to remove the mausoleum, but error to deny an injunction restraining the cemetery from granting permission for future aboveground structures.

The case law thus shows that the general rule requiring that substantial irreparable injury must threaten before an injunction will issue is subject to an exception. A restrictive covenant may be enforced by injunction without a showing that violation of the covenant will cause harm to the plaintiff, so long as such relief is not inequitable. According to this rule, the injunction in this case was properly granted.

It is noted that the restrictive covenants in the cases cited arose in connection with conveyances of property in fee, whereas the covenant in this case arises from the conveyance of an easement. So long as the plaintiff is entitled to enforce the covenant, however, there is no reason for applying a different rule. See *Bauby* v. *Krasow,* supra, 112, in which the plaintiff was permitted to enforce a covenant although it did not run with the land.

There is no error.

In this opinion LONGO, ARMENTANO and SPONZO, Js., concurred.

RUBINOW, J. (concurring). A land use restriction that does not benefit anyone is void. See *Colonial Trust Co.* v. *Brown,* 105 Conn. 261, 286, 135 A. 555; *Mitchell* v. *Leavitt,* 30 Conn. 587, 590. For that reason, the subject restriction is valid only if it is construed as permitting HELCO to withhold permission for any proposed use only when there is a rational ground for withholding permission. The trial court found that HELCO did not arbitrarily withhold permission, and that finding supports the judgment rendered.