[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 3902
This is an action brought by the plaintiff (Entex) against the defendants Kelley Behrens, Lisa White, and other defendants seeking a temporary and permanent injunction and damages for violation of an employment protective covenant by Bebrens and White.
The parties have agreed that the court is to decide only the issue of whether or not a temporary and permanent injunction should issue against these defendants. The question of damages is to be deferred for a future hearing. Any action against the other defendants is likewise to be determined later. The court, therefore, in this memorandum, will only consider whether or not an injunction should issue against Behrens and White.
 Factual Background
ENTEX is in the business of providing computer related services to its clients, including on-site personnel to assist businesses with their computer hardware, software and networking needs. When defendants Bebrens and White began their employment with ENTEX in 1997, each entered into a Confidentiality/NonSolicitation Agreement with ENTEX. The portion of this agreement containing the covenant in question reads as follows:
 Employee agrees and acknowledges that because of the Company's valuable interest in its customer relationships, for a period of one year following the termination of Employee's employment with the Company for any reason, Employee will not directly or indirectly solicit, service, have contact with or divert any entity which is, as of the time of the termination of Employee's employment or the immediate six month period prior to such termination, a customer of the Company that Employee had prior dealings with or knowledge about.
After defendants Behrens and White were hired in the Fall of CT Page 3903 1997, they were assigned by ENTEX to provide services at the Clinical Business Support Unit (CBSU) at Pfizer and worked on-site at CBSU's facilities in Groton, Connecticut. During their almost two years at CBSU, defendant Bebrens and White became familiar with CBSU' s computer systems, procedures and requirements as well as CBSU personnel.
Behrens' job was that of a desk top support technician. He was labeled a customer engineer," although he had no college degree nor was he an engineer of any sort. He had no knowledge specific to Pfizer or its customers. His job was mostly repairing computers and the programs in place at Pfizer.
White had less skills than Behrens. She was employed as an administrative assistant, including scheduling downloading of computers. White, similarly was a high school graduate with no particular training. She learned no confidential information on the Pfizer job.
At the end of May, 1999 Entex lost its contract with Pfizer to another provider, Inacom Corporation. As a result, thirty or more employees of Entex could no longer work for Entex at Pfizer.
Following the termination of Entex' s contract to work at Pfizer, discussions were had with Entex's employees concerning their future employment with Entex. The defendants presented evidence that three Entex supervisors told them that Entex would not hold them to the covenant.
They testified that both defendants, together with other employees attended a meeting shortly after the Pfizer contract was terminated. The meeting was called by John Forsyth, their supervisor, and the highest ranking Entex employee at CBSU. According to Behrens, Forsyth told those in attendance that Entex would not hold them to the restrictive covenant.
Other supervisors, namely Pat Wynne (told Bebrens) the same thing and Kristin Maller (told White) that they would not be held to their covenants. CT Page 3904
The plaintiff disputes this testimony but presented no evidence to the contrary. The court finds the defendants' testimony on this point credible and persuasive.
Despite these assertions, both defendants continued to work for Entex and were assigned jobs requiring long and difficult commuting on their part. There was apparently no other work of a similar nature available in the Groton-New London area.
Through Hallmark Totaltech, a personnel firm, both defendants were able to obtain employment at CBSU. Entex, however, refused to give either of them written releases, although it is undisputed that Entex gave such releases to at least two former employees to work at CBSU, one of whom was a higher level supervisory employee.
It should also be noted that at least two employees, Burton and Baker returned to work at CBSU without obtaining releases and, apparently, suffered no consequences from Entex.
White and Behrens have been continuously employed at CBSU since returning. White returned in September of 1999, and Bebrens in July of 1999.
 Issues
The defendants have interposed six special defenses. The court finds in favor of the plaintiff on the first special defense — estoppel, the fourth special defense misrepresentation, the fifth special defense — unclean hands and the sixth special defense — lack of consideration. These special defenses must fail because the defendants have failed to sustain their burden of proof as to them.
The other special defenses are second-waiver and third — unenforceability due to failure to protect a legitimate employer interest and being unreasonable in scope. CT Page 3905
In addition, the defendants argue that no injunctive relief may be ordered in this case because the plaintiff has not shown irreparable harm as required by Connecticut law.
Lastly they argue that balancing of the equities is required and that it tips in favor of the defendants.
 Law and Conclusion
1. Waiver
The law in Connecticut concerning waiver is concisely stated as follows: waiver is the voluntary and intentional relinquishment of a known right. The party seeking to assert the waiver must show that it has been prejudiced thereby. Advest, Inc. v.Wachtell, 235 Conn. 559, 569 (1995).
The defendants claim that Entex's act of allowing other employees to return to CBSU, in itself, constituted a waiver of the restrictive covenant by its actions. See BradfordNovelty Company v. Tachnomatic, 142 Conn. 166, 170-171
(1955). While this is a correct statement of the law, this court cannot equate the relinquishment of the plaintiffs covenant rights as to other employees as conclusory as to these defendants. Such action does, however, corroborate the defendants' testimony and the other evidence presented that Entex did, in fact, waive, its rights as to them. The court, as previously stated, finds that testimony credible on this issue. Forsyth's statements were further corroborated by other former employees, Shawn Brantz and Tracey Shafer. Again, it is important to note that Entex offered no evidence to contradict this testimony. The court finds for the defendants on the special defense of waiver.
2. Whether the restrictive covenant is unenforceable because it fails to protect a legitimate employer interest and is unreasonable in scope. CT Page 3906
This, of course, is the paramount issue in this case, because this court must decide what restrictions, if any, the law imposes on an employer in protecting its interests in a restrictive covenant.
The parties agree that restrictive covenants which are reasonable in time, scope, provide no greater protection than necessary to the employer, are not unduly burdensome to the employee and do not excessively interfere with the public's interest are enforceable Robert S. Weiss and Associates. Inc. vs.Wiederlight, 200 Conn. 535 (1988), Scott v. General Iron Welding Co., 171 Conn. 132 (1976).
While it is difficult to analyze the scope of an agreement in a vacuum, this court is asked to interpret it only as it pertains to these employees working in their place of employment for a period of one year after their severance from their former employer, Entex, the court cannot find that the agreement, in itself, is unreasonable or overly broad.
Whether the interest sought to be protected here is a legitimate employer interest is yet another question.
The plaintiff presented one witness on this issue, Marie Ann Randazzo, a vice president for sales and marketing. Ms. Randazzo emphasized the importance of good employees to her company, the difficulty involved in replacing them and retraining replacements. She asserted that the purpose of the covenant was to prevent competitors from doing work with their employees, thus depriving Entex of business.
(It should be noted here that there is no claim by the plaintiff that these employees were induced by Inacom or Hallmark to leave Entex and go to work for Pfizer.)
Neither party has cited any appellate authority that such a purpose is enforceable under Connecticut law.[1] There is some superior court authority that supports the plaintiffs position. CT Page 3907 See Gartner Group, Inc. v. Mewes, CV 91-0118332, Judicial District of Stamford-Norwalk January 3, 1992, Guardsmark, Inc. v.Effective Security Systems, Inc., CV 322913 Judicial District of New Haven, August 26, 1992.
Under the facts of this case, this court holds that an intention to hold an employee for no other purpose that to prevent that employee from working for a competitor is unreasonable.
As this court has previously noted, these employees were of an extremely low skill level. They possessed no skills that were not easily duplicated by other firms. The court does not hold that a damage action cannot be maintained, but an injunction is not reasonable to impose on these defendants.
The defendants have cited a United States Court of Appeals case on this point. In that case, the court decided under New York law (which is very similar to Connecticut law in employment restrictive covenant cases) "that the restrictive covenant will be enforced to the extent that it is reasonable in duration and area necessary to protect the employer's legitimate interest, not harmful to the general public, and not unreasonably burdensome to the employee."
The court went on to identify those legitimate interests as the prevention of disclosure of trade secrets or confidential information, and secondly to protect from competitors an employees' unique, special or extraordinary services. The court added that "the courts have long held that an employer cannot insulate himself from competition from former employees." TrionicAssociates, Inc. v. Harris Corporation et al., 27 F. Sup. 175,183-184, (1998).
This court is of the opinion that the Trionic court has interpreted the law correctly, and agrees that in this case, as in Trionic, that the plaintiff may have a legitimate interest in preventing the defendants from working for its current accounts. It does not have a legitimate interest in preventing them from CT Page 3908 working for a former account. Enforcement against these employees would do nothing more than punish these employees. Trionic, p. 184. Enforcement would not help the plaintiff because the employees have already left their employ.
3. Is irreparable harm required in employment restrictive covenants?
The court is of the opinion that the cases support the proposition that irreparable harm need not be shown. See HartfordElectric Light Co. v. Levetz, 173 Conn. 15 (1977), Mattis v.Lally, 138 Conn. 51, 56 (1951). The rationale behind this rule is that, in such cases, damages may be difficult to prove so that the court will presume such damages. The court nevertheless, must still find that relief is not inequitable. Hartford ElectricLight Co., supra, p. 21.
4. This brings the court to the fourth consideration: does the plaintiffs request for relief seek an inequitable remedy? Put another way, does the balancing of the equities in this case tip in favor of the plaintiff or the defendant?
Our Supreme Court has held that such a determination is required of the trial court. Even where the court finds it is justified in granting equitable relief to the moving party, it "may consider and balance the injury complained of with that which will result from interference by injunction . . . the relief granted must be compatible with the equities of the case . . . we must assume . . . (that) the court properly weighed the equities between the parties to the action." Berin v. Olson,183 Conn. 337, 342-343, (1981).
As this court has previously opined, Entex's sole evidence as to harm is the loss of "bodies" to a competitor. The defendants have no ability to impart any information or secrets to Inacom. As was previously noted, other employees of Entex were permitted by it to work at the Pfizer account.
On the other hand, Bebrens and White testified (and the court so finds) that their remaining with Entex created a hardship for CT Page 3909 them with long commuting to the jobs Entex assigned to them. The only alternative they found was the Inacom job.
The court finds that the balance of the equities tips in favor of Behrens and White and that it would be inequitable to enjoin them from their present employment.
 Conclusion
In summary, the court finds that the plaintiff has demonstrated presumptive harm pursuant to its restrictive covenant.
The court also finds that Entex has waived the covenant as to Bebrens and White.
It further finds that the plaintiff cannot prevail because the covenant, as to these defendants, has no legitimate purpose and is therefore unreasonable and unenforceable.
Lastly, assuming the covenant enforceable, in this case the court would decline to enjoin these defendants because a balancing of the equities tips in favor of the defendants.
Judgment may enter denying a temporary and permanent injunction against the defendants Bebrens and White.
Freed, J.