## THOMAS FITCH *vs.* THE NEW HAVEN, NEW LONDON & STONINGTON RAILROAD COMPANY.

The legislature chartered a railroad company with power to construct a railroad from New Haven to Stonington, crossing New London harbor by a ferry at New London ; the provision as to the ferry being as follows :—" To establish a ferry from the termination of the railroad on the east side of New London harbor, to some convenient point on the west side, as a part of their railroad or route, to connect the same with said railroad on the west side." Held, that a general ferry was not granted, and the railroad company was enjoined against the use of the ferry for any other purpose than the transportation of the passengers and freight of the railroad.

The doctrine as to public grants, laid down in *Hartford Bridge Co.* v. *Union Ferry Co.*, 29 Conn., 210, affirmed.

AMICABLE submission upon the following agreed facts :—

The plaintiff was the lessee of a general ferry, between the towns of New London and Groton, across New London harbor. The ferry was an ancient one, and belonged to the town of New London, by which it was leased to the plaintiff. The defendants owned and operated a railroad running from New Haven through New London to Stonington, and by means of a ferry crossing New London harbor, and claimed the right to use their ferry for the general transportation of passengers and freight across the harbor. The railroad company was constituted by the union, in the year 1856, of the New Haven and New London Railroad Company with the New London and Stonington Railroad Company, under a special act of the General Assembly passed in that year. The New London and Stonington Railroad Company was incorporated in 1852, and that portion of its charter relating to the ferry is as follows :—

" Sec. 8. Said company are hereby authorized and empowered to establish and construct a ferry, from the termination of said railroad on the east side of Thames River to some convenient point in the city of New London on the west side of said river, and for that purpose to acquire and hold all necessary land and wharfing privileges on either side of said river, and to have, maintain and use proper and convenient boats, propelled by steam or other motive power, for the purpose only of conveying the passengers and freight of said railroad

to and from the same, and of connecting with any other railroad in said city of New London."

The act of 1856, authorizing the union of the two companies, contained the following provision with regard to the ferry:—

" Sec. 5. The New Haven, New London and Stonington Railroad Company may establish a ferry from the termination of their proposed railroad on the east side of Thames River or New London harbor to some convenient point on the west side of said river or harbor in the city of New London, as a part of their railroad or route, to connect the same with said railroad on the west side of said river or harbor; and for that purpose may acquire and hold all necessary or convenient lands and wharfing privileges, and connect their railroad with any point where said ferry shall be established, and purchase, have, maintain and use proper and convenient boats propelled by steam or other power."

It was agreed between the parties that if the court should be of opinion that the railroad company had no right to transport persons and freight upon their ferry boats except in connection with the transportation of the same upon their railroad, a decree might be passed enjoining the defendants against such use of the ferry—but if otherwise that the case be dismissed. The case was reserved by the superior court, on the facts so agreed, for the advice of this court.

*Crump,* for the plaintiff.

*Lippitt,* for the defendants.

ELLSWORTH, J. We think it is too late in this court to claim that the legislature could not have granted to the respondents a general ferry between New London and Groton when they granted them their charter in 1856. The old ferry between these towns, the one now enjoyed by the petitioner, is not so exclusive in its character as to render it improper for the legislature, if it should be thought necessary, to establish a new ferry, although such new ferry might somewhat impair the value and income of the old one; nor need there have

been here an assessment of damages for the injury done in that case to the old ferry, as was held to be necessary in the case of *The Enfield Bridge Co.* v. *The Hartford & N. Haven R. R. Co.,* (17 Conn., 40,) where the grant to the bridge company was held by us to be exclusive.

This entire subject has been so fully examined by this court, in the recent case of *The Hartford Bridge Co.* v. *The Union Ferry Co.,* 29 Conn., 210, where we state what we understand to be the law on the subject, with its necessary distinctions and qualifications, that it is sufficient to refer to that case without going again into the consideration of the subject. From that decision it will be seen, that upon the facts agreed in the present case, the proprietors of the old ferry have in our opinion no constitutional right to complain of the new, or to ask for the assessment of damages on account of a supposed encroachment upon their franchise.

But we think the other point made by the petitioner's counsel, with regard to the construction of the grant to the respondents, must be fatal to the claim of the latter. They insist that the respondents' charter no where contains a grant of a *general, unlimited* ferry ; or such a franchise as justifies them in carrying passengers between the two places above named, except as the passage is connected with a further use of the railroad. It is certain that ferries, like all public franchises, are subject to the pleasure and control of the legislature. The legislature alone can create them, and it must therefore be conceded that the respondents have no right to a general ferry, unless such a ferry is granted to them in their charter. We see no such grant. They obtained none by virtue of the charter to the New London and Stonington Railroad Company ; on the contrary, the 8th section of that charter expressly restricts the right of ferriage to what is necessary " for carrying the passengers and freight of said railroad to and from the same." When afterwards, in 1856, the rights, franchises and duties of the New London and Stonington Railroad Company became vested in these respondents, under a charter consolidating that company with the New Haven and New London Railroad Company, we should have been surprised to find that the

Fitch *v.* N. Haven, N. London & Stonington R. R. Co.

legislature had thereby converted what was a limited ferry under the grant to the New London and Stonington Railroad Company, into a general unlimited ferry for the consolidated company. The legislature might have done so, it is true, as it had the power, but we should not under the circumstances have expected it, and we may well be jealous of that construction of the consolidated charter which the respondents say gives them an enlarged or general ferry. We believe nothing of the kind was contemplated by the legislature ; nor will we impute such intention to the persons who procured the passage of the act.

But the language of the consolidated charter is too plain to admit of any serious difficulty or doubt in its construction. The 5th section of this charter, when fairly considered, can be construed to mean nothing more than what is expressed in the earlier charter, for it declares that the ferry shall be " a part of the railroad or route," to connect the road on the east side of the harbor with that on the west side. If then it is a part of the new continuous railroad, it is not and can not be a general or unlimited ferry. The two are absolutely inconsistent. If the ferry be a general one, it ought to be accessible at all times by all people, with such vehicles and freight as are carried over ordinary ferries for a fixed toll, besides being subject to a ferry commissioner, as other ferries, and not to cease or expire whenever the railroad itself ceases. Now nothing like this is the case with this ferry, which is a mere link or connection between the two railroads. And further, if a ferry granted like this in connection with a railroad is to be worth anything to the railroad company, it must be exclusively appropriated to the use of the company, and be wholly under their control—that is, it must be a railroad and nothing more ; not a common highway or bridge over a river or harbor. And we are the more satisfied in being able to put this construction on the language of the new charter, because we are confident, as we have already said, that the respondents did not require any further franchise, and could not have been supposed by the legislature, when they asked for authority to unite the two old companies, to ask for any ferry except for

their special and exclusive use. So much they needed, and just so much we are satisfied they obtained, and no more.

Upon the case made therefore for our judgment, we hold that the petitioner is entitled to a decree against the respondents, enjoining them against using their ferry-boat for transporting passengers or freight between the two towns of New London and Groton, except for and in connection with a further use of their railroad.

In this opinion the other judges concurred; except SANFORD, J., who did not sit.

# SUPREME COURT OF ERRORS.

## LITCHFIELD COUNTY, APRIL TERM, 1861.

Present,

STORRS, C. J., HINMAN, ELLSWORTH AND SANFORD, JS.