CITY OF GROTON v. YANKEE GAS SERVICES COMPANY
(14458)

Peters, C. J., Callahan, Borden, Berdon and Norcott, Js.

Argued September 25, 1992—decision released February 23, 1993

*Steven R. Humphrey,* with whom were *David W. Bogan, Timothy D. Bates* and, on the brief, *Lucia B. Brooks* and *Pamela R. Zeller,* for the appellant (plaintiff).

*Robert J. Cathcart,* with whom were *Gregory T. D'Auria* and *Timothy Patrick Brady,* for the appellee (defendant).

NORCOTT, J. The principal issues in this appeal are whether: (1) the plaintiff, the city of Groton, possesses an exclusive gas franchise pursuant to a 1913 legislative act; and (2) the plaintiff is entitled to an injunction to prevent the defendant, Yankee Gas Services Company, from providing gas service within the plaintiff's franchise area. The plaintiff brought suit against the defendant seeking an injunction to prohibit the defendant from laying pipe, entering into contracts for or providing natural gas service to any customer located within the plaintiff's franchise area. The trial court denied the plaintiff's request for permanent injunctive relief. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The following facts are relevant to this appeal. In 1913, by special act of the Connecticut legislature, the charter of the borough of Groton[1] was amended to grant the plaintiff a gas franchise, which allowed it to manufacture and sell gas within its borders. 16 Spec. Acts 814, No. 155 (1913). The plaintiff had previously been granted electric and water franchises, pursuant to 1901 and 1903 legislative acts respectively.

In 1927, the state granted the Connecticut Light & Power Company (CL&P) a gas franchise authorizing

---

[1] The city of Groton was known as the borough of Groton from 1903 to 1964.

it to manufacture and distribute gas anywhere in the state provided that the territory was not already occupied and served by another entity. 20 Spec. Acts 223, No. 195, § 1 (1927). The state granted another gas franchise in 1955 to The Mohawk Gas Company (Mohawk) authorizing it to manufacture, distribute, and deliver gas subject to the limitations set forth in § 2 of its charter.[2] 27 Spec. Acts 166, No. 218, §§ 1, 2 (1955). In 1989, Mohawk amended its charter to change its name to Yankee Gas Services Company.

[2] Section 2 of the charter of the Mohawk Gas Company provides: "Said corporation is vested with the power, subject to the limitations hereafter stated: (a) To build, acquire by lease, purchase or otherwise, own and operate one or more pipelines and related facilities, including compressors, pumping stations, tanks, storage facilities, mains, appliances and other pertinent equipment for the gathering, mixing, transmission and distribution of natural, manufactured and mixed gas and the by-products thereof; (b) to buy, manufacture, produce, sell, furnish, transport, store, distribute, dispose of and otherwise deal in natural, manufactured and mixed gas and the by-products thereof; provided, within the franchise area of any person, firm, corporation or municipality which is chartered or authorized by the state of Connecticut to transmit or sell gas within said franchise area, this corporation shall not exercise the authority granted by this section to sell natural, manufactured or mixed gas to any person, firm, corporation or municipality except a person, firm, corporation or municipality authorized to transmit or sell gas within such franchise area, unless such sale is consented to by such person, firm, corporation or municipality so authorized to transmit or sell gas within such franchise area; (c) to install, operate and maintain, subject to any requisite approval of public authority, pipelines, mains and related appliances necessary for the transmission, storage and distribution of gas, either overhead or underground, over or under streams, and in, over, under and upon the public highways, streets, avenues and public parks or grounds in any town, city and borough within this state; (d) to acquire by merger, consolidation, lease, purchase or otherwise, upon such terms and conditions as may be agreed upon, and in the manner and subject to the terms and conditions provided by the general statutes in the case of the merger or consolidation or other acquisition of corporations organized under the general statutes, and to hold, own, use, exercise, enjoy and dispose of the whole or any part of the gas property, rights, privileges, properties, securities, contracts, powers and franchises now or hereafter owned or possessed by any gas company chartered by the general assembly of the state of Connecticut for the purchase, manufacture, production, transmission, distribution and sale of natural, manufactured and mixed gas and matters incidental thereto."

Except for a period of time when it operated a propane gas plant and distribution system in the Fort Hill area of the city, the plaintiff has never provided gas service within its franchise area because it was not economically feasible to do so.[3] In 1985, the economic prospects for gas service changed[4] and the plaintiff began taking steps to develop a gas distribution system, including hiring a consulting engineering firm, obtaining cost estimates for construction and operation, and obtaining approval of a bond issue. The plaintiff also negotiated with the defendant, at the defendant's initiative, to have the defendant supply the plaintiff with its natural gas requirements. An agreement, however, was never reached. To date, the plaintiff has still not begun to service customers with natural gas within its franchise area.

In June, 1989, the defendant acquired by assignment the gas franchise rights of CL&P after a United States Securities and Exchange Commission directive ordered CL&P to divest itself of its gas business. This assignment included the rights granted originally to CL&P in the 1927 act. In 1991, the defendant constructed a gas pipeline extending just inside the Groton town boundary with Ledyard that is capable of serving the Groton franchise area with gas. The defendant subsequently entered into a contract with the United States Department of the Navy to supply it with gas at its submarine base in Groton. The defendant also intends to

---

[3] The plaintiff does, however, operate an electrical and water utility servicing all areas within its franchise.

[4] Before 1985, the plaintiff did not have access to a pipeline from which it could obtain an economical supply of gas. However, as a result of Federal Energy Regulatory Commission Order No. 436; 50 Fed. Reg. 42,408 (1985); an intrastate pipeline reached the plaintiff's territory and lower cost gas thereafter became available. Additionally, it appeared in 1985 that a cogeneration project would be built by Pfizer, Inc., in Groton that would increase the demand for gas service and also make it economically worthwhile to start pursuing the development of a gas distribution system.

supply other customers within the town and city of Groton with gas.

The plaintiff brought this action against the defendant seeking an injunction prohibiting the defendant from, among other things, constructing a gas distribution system and selling gas in the plaintiff's franchise area. The plaintiff claimed that it had an exclusive franchise to sell gas in the town and city of Groton and that, even if its franchise were not exclusive, the defendant was not authorized under its charter to enter the plaintiff's franchise area without the plaintiff's consent. The trial court denied the plaintiff's request for injunctive relief, concluding that the plaintiff's franchise was not exclusive and that the defendant did not need to obtain the plaintiff's consent before entering the plaintiff's franchise area.

On appeal, the plaintiff claims that the trial court improperly denied its request for injunctive relief[5] because the court improperly concluded that: (1) the plaintiff's gas franchise was not exclusive; and (2) the defendant's charter did not require it to obtain the plaintiff's consent before entering the franchise area because (a) the limitation in the defendant's charter requiring consent did not apply to the rights assigned to it under the CL&P charter, and (b) the plaintiff's efforts to develop a distribution system did not constitute occupying and serving its franchise area within the meaning of the CL&P charter. The plaintiff also claims that the trial court improperly excluded evidence that the plaintiff's electric utility franchise would be

---

[5] The plaintiff challenges, as a separate claim, the trial court's denial of its request for injunctive relief. Whether an injunction was warranted, however, necessarily depends on whether the plaintiff possessed an exclusive franchise or whether the defendant entered the plaintiff's franchise territory without authority. Therefore, we address the plaintiff's challenge to the trial court's denial of its request for injunctive relief as subsumed within the plaintiff's other claims rather than as a separate claim.

adversely affected if the defendant supplied gas to customers in the plaintiff's franchise area. We affirm the judgment of the trial court.

I

The plaintiff first claims that the trial court improperly denied an injunction because it incorrectly found that the 1913 Special Act that amended the plaintiff's charter did not grant the plaintiff an exclusive franchise to provide gas within the town borders. If a statute confers an exclusive franchise, an injunction is appropriate to prevent infringement of the franchise rights. See *New England Railroad Co.* v. *Central Railway & Electric Co.*, 69 Conn. 47, 55, 36 A. 1061 (1897). Number 155 of the 1913 Special Acts, which amended the charter of the borough of Groton to grant it a gas franchise, authorized the plaintiff to "produce, generate, and manufacture gas and electricity and to sell and use the same for the purpose of furnishing light, heat, and power to any or all persons who may desire the same, and for that purpose [Groton] shall have the right to build, maintain, and operate wires or other electrical conductors and gas pipes necessary for said business over, through, or under any or all of the streets, avenues, lanes and highways in the [franchise territory]; to take and hold any lands, property, or privileges, and to exercise any powers that may be necessary or convenient for carrying into effect any purpose of this act."

The trial court ruled that, in the absence of any language in the statute indicative of an exclusive right to supply gas, the plaintiff did not have a right by virtue of its franchise to exclude another corporation from providing gas service to the area under a similar franchise.[6] The plaintiff maintains on appeal that both the

---

[6] The trial court also found, as part of its finding on the exclusivity issue, that the plaintiff's gas franchise was separate and distinct from its water and electricity franchises, and therefore that the plaintiff could not treat

common law and public policy support implying exclusivity into the terms of its gas franchise. The plaintiff argues that the legislature intended to convey exclusive, monopolistic franchises because it is the public policy of this state that utility service be rendered by monopolies. Only by keeping each franchise area free from competition, the plaintiff claims, may that public policy be realized. The plaintiff argues, therefore, that regardless of whether it ever exercises its franchise right, it may exclude other franchise holders from entering its franchise area because otherwise competition will not be controlled. We disagree.

A franchise is a particular privilege conferred by grant from the government on an individual or group of individuals that does not belong to the citizens generally of common right. *Crum* v. *Bliss,* 47 Conn. 592, 602 (1880); *Norwich Gas Light Co.* v. *Norwich City Gas Co.,* 25 Conn. 19, 35 (1856). The general rule with respect to public grants or charters is that they are construed in favor of the state and against the grantees. See *Hartford Bridge Co.* v. *Union Ferry Co.,* 29 Conn. 210, 223 (1860); *Norwich Gas Light Co.* v. *Norwich City Gas Co.,* supra, 33; 3 J. Sutherland, Statutory Construction (5th Ed. 1992) § 64.05; 36 Am. Jur. 2d, Franchises § 26 (1968). "Grants of rights and privileges by a State or municipality are strictly construed and whatever is not unequivocally granted is withheld—nothing passes by implication." *Piedmont Power Co.* v. *Graham,* 253 U.S. 193, 194–95, 40 S. Ct. 453, 64 L. Ed. 855 (1920).

It follows, therefore, that unless franchise rights are expressly made exclusive by the plain language of the act in which they are granted, courts will not find exclusivity by implication. See *Knoxville Water Co.* v. *Knox-*

the gas franchise as part of an integrated whole for purposes of determining whether the right had yet been exercised. The plaintiff does not challenge that finding on appeal.

*ville,* 200 U.S. 22, 33, 26 S. Ct. 224, 50 L. Ed. 353 (1906); 1 O. Pond, Public Utilities (4th Ed. 1913) p. 415; 36 Am. Jur. 2d, supra, § 36. This principle was recognized early on by the United States Supreme Court in *Proprietors of Charles River Bridge* v. *Proprietors of Warren Bridge,* 36 U.S. (11 Pet.) 420, 9 L. Ed. 773 (1837), in which the court held that a grant by a state legislature of the right to maintain and operate a bridge was not exclusive because the grant did not expressly say that it was. The court noted: "The continued existence of a government would be of no great value, if by implications and presumptions, it was disarmed of the powers necessary to accomplish the ends of its creation; and the functions it was designed to perform, transferred to the hands of privileged corporations." Id., 547.[7] The principle that the exclusivity of franchise rights will not be implied if not expressly stated has been enforced since *Proprietors of Charles River Bridge.* See, e.g., *Piedmont Power Co.* v. *Graham,* supra, 195; *Pearsall* v. *Great Northern Railway Co.,* 161 U.S. 646, 667, 16 S. Ct. 705, 40 L. Ed. 838 (1896), and cases cited therein; *Norwich Gas Light Co.* v. *Norwich City Gas Co.,* supra, 38; J. Joyce, A Treatise on Franchises § 257 (1909).[8]

---

[7] The United States Supreme Court also stated with respect to the charter before it: "In charters of this description, no rights are taken from the public, or given to the corporation, beyond those which the words of the charter, by their natural and proper construction, purport to convey. . . . The whole community are interested in this inquiry, and they have a right to require that the power of promoting their comfort and convenience . . . shall not be construed to have been surrendered or diminished by the state; unless it shall appear by plain words, that it was intended to be done." *Proprietors of Charles River Bridge* v. *Proprietors of Warren Bridge,* 36 U.S. (11 Pet.) 420, 549, 9 L. Ed. 773 (1837).

[8] Indeed, the attorney general of Connecticut in 1973 reiterated this doctrine in a letter to the public utilities commission. There, the attorney general stated "the grant of a franchise is not to be implied to be the grant of an exclusive franchise, nor is any other attribute or power to be implied that is not expressly set forth in the charter . . . ." Letter from Robert K. Killian, Attorney General, to Howard E. Hausman, Chairman, Public Utilities Commission (March 12, 1973).

Accordingly, without an express provision of exclusivity in the grant, a franchise is not exclusive in the sense that the legislature cannot grant a similar valid franchise to another entity. See *City of Campbell, Mo.* v. *Arkansas-Missouri Power Co.,* 55 F.2d 560, 562 (8th Cir. 1932); *Norwich Gas Light Co.* v. *Norwich City Gas Co.,* supra; 1 O. Pond, supra, p. 418. Application of these principles to the plaintiff's claim leads us to conclude that the lack of exclusivity language in the franchise granted by the legislature to the plaintiff in 1913 precludes a conclusion that the plaintiff's franchise bars any other validly franchised entity from operating in Groton.[9]

Our conclusion is buttressed by the practice of our state legislature. The legislature has in other instances specifically included exclusivity language in the franchise grants of other organizations. See "Resolve Incorporating the Company for Erecting a Toll Bridge, with Locks, from Enfield to Suffield," 1 Private Laws 249-50 (1798) ("no person or persons shall have liberty to erect another bridge anywhere between the north line of said Enfield and the south line of Windsor"); "Amending the Charter of the Norwich Gas Light Co.," 3 Private Laws 585-86, § 2 (1855) ("the right . . . is hereby declared to be exclusive"). The legislature has also recognized and provided varying degrees of protection to preexisting franchises when it has granted new franchises. See "Incorporating the Branford Electric Company," 12 Spec. Acts 104-105, No. 73, § 2 (1895) (*"provided, however,* said corporation shall not distribute or sell electricity for any purpose in the town of

---

[9] We note that the principles of law outlined above involve cases in which franchise rights were granted by a state legislature to a private corporation or by a municipality to a private corporation or municipal public utility. We have found no case discussing exclusivity involving a state granted franchise to a municipality. Neither party has raised that distinction before this court. We see no reason, however, why the same principles would not apply here.

Guilford, in competition with any existing electric light company") (emphasis in original); "Incorporating the North Haven Gas and Power Company," 14 Spec. Acts 830-31, No. 343, § 1 (1903) ("provided, however, that the right to manufacture, sell and distribute gas . . . is upon the express condition that The New Haven Gas Light Company shall not, prior to July 1, 1906, have laid its gas mains and supplied gas"). The legislature has the discretion to determine the extent of the rights granted in a franchise, and to grant the right to compete in certain areas. Had the legislature intended to grant the plaintiff an exclusive franchise, it could easily have so provided in the plaintiff's charter.[10] We conclude, therefore, that the trial court properly determined that the plaintiff's franchise was not exclusive.

## II

The plaintiff also claims that, even if its gas franchise is not exclusive, it was entitled to injunctive relief because the defendant could not enter its franchise territory under its charter without the plaintiff's consent. The grant of a nonexclusive franchise does not carry with it the right to be free from competition from another entity that has been granted a valid franchise. It does, however, embody a right to be free from unau-

[10] Indeed, at a hearing of the Committee on Cities and Boroughs considering passage of the 1913 amendment to the plaintiff's charter, Representative Charles S. Avery commented: "[S]ince the borough has never been engaged in the manufacture and distribution of gas the question might come up whether or not the legislature might not some time or other incorporate another company. I think if the citizens were given to understand that they had the right to manufacture and sell gas the legislature would not in the future authorize some private company to do that. It is simply a matter of protection. *Even if they give us that power they can do it, but they would not be apt to.*" (Emphasis added.) Conn. Joint Standing Committee Hearings, 2 Cities and Boroughs, 1913 Sess., pp. 592–93. It appears, therefore, that at the time the plaintiff's charter was amended the legislature understood that it had the power at a later date to authorize another company to service the franchise area.

thorized competition, and if a party enters a franchisee's territory without such authorization, an injunction is a proper remedy. *Frost* v. *Corporation Commission of Oklahoma,* 278 U.S. 515, 521, 49 S. Ct. 235, 73 L. Ed. 483 (1929); 36 Am. Jur. 2d, supra, § 34. Therefore, our determination of whether the trial court improperly denied the plaintiff's request for injunctive relief requires us to examine whether the defendant entered the plaintiff's franchise area under a valid franchise.

The plaintiff claims that the trial court improperly determined that the defendant had authority to enter the plaintiff's franchise area because the court improperly: (1) interpreted provisions of the defendant's charter that afford the basis for the defendant's right to enter the plaintiff's franchise area; and (2) determined that the plaintiff's actions with respect to establishing its own gas distribution system did not suffice to constitute "occupying and serving" within the meaning of the CL&P charter.[11] We address each of these claims in turn.

A

INTERPRETATION OF CHARTER PROVISIONS

Section 2 of the defendant's charter defines the defendant's powers with respect to exercising its gas franchise and imposes certain limitations on those

---

[11] The plaintiff also claims that the trial court improperly excluded evidence that the plaintiff attempted to introduce relating to the impact that the defendant's sale of gas in Groton would have on the plaintiff's electric franchise. The plaintiff maintains that this evidence was admissible to show that it would suffer irreparable harm if the defendant were allowed to infringe on the plaintiff's franchise. Our disposition of the plaintiff's challenge to the defendant's authority to enter the plaintiff's franchise territory without its consent, however, makes it unnecessary for us to address that issue. Likewise, because we hold in favor of the defendant, we need not address the defendant's alternative ground for affirmance of the trial court's decision.

powers. See footnote 2. Specifically, § 2 (b) empowers the defendant to operate in any franchise area in the state, subject to the limitation that it not "exercise the authority granted by this section to sell natural, manufactured or mixed gas to any person, firm, corporation or municipality except [one] authorized to transmit or sell gas within such franchise area, *unless such sale is consented to* by such person, firm, corporation or municipality . . . ." (Emphasis added.) 27 Spec. Acts 166, No. 218, § 2 (1955).

The plaintiff argued before the trial court that this limitation in the defendant's charter meant that the defendant could not enter the plaintiff's franchise area without its consent. The defendant countered that, because it had been assigned the franchise rights granted to CL&P in 1927, it could enter the plaintiff's franchise territory pursuant to that right, and therefore was subject to the limitation in the 1927 act that consent be obtained only if the territory was already occupied and served by another company.[12] The defendant cited as authority for this proposition § 2 (d) of its charter, claiming that it contemplated such activity. That section provides that the defendant may "acquire by merger, consolidation, lease, purchase or otherwise . . . and . . . hold, own, use, exercise, enjoy and dispose of the whole or any part of the gas property, rights, privileges, properties, securities, contracts, powers and franchises now or hereafter owned or possessed by any gas company chartered by the general assembly of the state of Connecticut . . . ." Id.

---

[12] Number 195 of the 1927 Special Acts, which granted CL&P a gas franchise, provides in relevant part: "The Connecticut Light & Power Company is authorized to manufacture, purchase, supply and/or distribute gas within the state of Connecticut for light, heat, refrigeration, fuel and all purposes for which it now is or may hereafter be used, and to manufacture and sell the by-products thereof, excepting that it shall not have power to supply and sell gas within the territory occupied and served by any other company now incorporated unless by consent of such other company . . . ."

The trial court concluded that the consent limitation expressed in § 2 (b) applied only to that section, and had it been intended to apply also to rights exercised under § 2 (d), it would have appeared in the prefatory language of the entire § 2 rather than within the body of a specific subsection. The trial court noted that to apply the limitation of § 2 (b) to rights acquired under § 2 (d) would render meaningless the language that the defendant could acquire and exercise *the whole or any part of* another gas franchise. Therefore, the trial court concluded, when the defendant acquired CL&P's franchise rights, it acquired the ability to enter any area not already served with gas without first obtaining the consent of the municipality.

The plaintiff maintains that the trial court improperly interpreted the provisions of the defendant's charter. The plaintiff argues that reading the defendant's charter to permit the defendant unilaterally to enter the plaintiff's franchise territory in effect expands the powers granted to the defendant in its governing instrument. The plaintiff claims that the defendant's charter makes consent a precondition to service in areas in which there is an existing gas franchise holder, and that only legislative action can expand the defendant's rights to avoid the consent requirement.

The defendant argues, to the contrary, that interpreting the limitation of § 2 (b) to apply to all of § 2 diminishes the power granted to the defendant under its charter as enacted. The defendant contends that the provision in § 2 (d) that it may acquire and exercise *the whole* of another company's franchise contemplates that the defendant be able to exercise fully franchise rights already in existence. It is therefore, the defendant argues, only to the extent that the defendant's franchise grants it a new and independent right to sell gas, which § 2 (b) authorizes it to do, that it must first obtain

the consent of a preexisting franchise holder. We agree with this interpretation.

In interpreting the language of a statute, we are guided by the premise that we must consider the statute as written and read it as a whole. *Orticelli* v. *Powers,* 197 Conn. 9, 13–14, 495 A.2d 1023 (1985). "[N]o part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . and no word in a statute is to be treated as superfluous. Insofar as it is possible, the entire enactment is to be harmonized, each part made operative." (Citations omitted; internal quotation marks omitted.) *Peck* v. *Jacquemin,* 196 Conn. 53, 66, 491 A.2d 1043 (1985).[13] We approach this task mindful of the assumption that the legislature intended to accomplish a reasonable and rational result. Id.

Reading § 2 of the defendant's charter as a whole, we are persuaded that the legislature intended that the defendant have the power to acquire franchise rights that were not subjected to a consent limitation. The plaintiff claims that the language of § 2 (b) limiting "the authority granted by *this section* to sell . . . gas" (emphasis added) requires reading the consent limitation to apply to all of § 2. The plaintiff argues that, had the legislature intended otherwise it would have referred to the authority granted by *this subsection* rather than section. Such an interpretation, however, would render meaningless the provision of § 2 (d) that

---

[13] The plaintiff argues that the nature of a franchise is that of a contract between the sovereign and the grantee, and therefore we must apply contract principles of interpretation. We note that the interpretation of contracts requires us to undertake the same analysis, and to construe all of the relevant provisions as a whole so that none is rendered meaningless. See *Barnard* v. *Barnard,* 214 Conn. 99, 109, 570 A.2d 690 (1990); *Hatcho Corporation* v. *Della Pietra,* 195 Conn. 18, 23, 485 A.2d 1285 (1985).

the defendant may acquire and *exercise the whole* or any part of a franchise already granted to another entity.

We find it significant that the only provision in which the right to sell gas is granted to the defendant is § 2 (b). Therefore, it is a reasonable construction to read the limitation on the right to sell gas, that consent of the franchise holder be obtained, as applicable to the power granted in § 2 (b) alone. A reading of the provisions as a whole indicates that § 2 (b) granted the defendant a new and independent right to sell gas, and that the consent requirement extends protection to pre-existing franchise holders from that new right. If, however, no new right is being exercised and the defendant is instead exercising rights by virtue of its acquisition of an existing gas franchise, this protection is unnecessary, and the defendant may exercise such acquired franchise subject only to the limitations contained in that franchise at the time the assignment was made.

We conclude that the trial court properly determined that the terms of the defendant's charter did not require it to obtain the plaintiff's consent before entering the plaintiff's franchise territory. Such consent would have been required only if it had been necessary under the terms of the franchise acquired by the defendant from CL&P.

B

WHETHER THE PLAINTIFF OCCUPIED AND SERVED
ITS FRANCHISE AREA

The plaintiff also claims that, even if the defendant's authority to enter the plaintiff's franchise area is governed by the 1927 franchise assigned to the defendant by CL&P, the trial court improperly determined that the plaintiff's efforts to develop a gas distribution system did not constitute "occupying and serving" the

franchise area within the meaning of CL&P's charter. The CL&P franchise states that it may supply gas anywhere in the state except "within the territory occupied and served by any other company now incorporated unless by consent of such other company." 20 Spec. Acts 223, No. 195, § 1 (1927). The plaintiff argued before the trial court that, even if the 1927 franchise provisions govern, the plaintiff's consent was still required because it was already occupying and serving its franchise area. The trial court found that the plaintiff's plans were tenuous at best and did not constitute serving the franchise area with gas. Therefore, the trial court concluded that this restriction did not preclude the defendant from serving the franchise area.

On appeal, the plaintiff maintains that its actions in pursuit of establishing a gas distribution system constitute "occupying and serving" and that its consent was, therefore, necessary before the defendant could enter the franchise area. We disagree.

Whether the plaintiff "occupied and served" its franchise area is a question of fact, and we will upset a factual determination of the trial court only if it is clearly erroneous. "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Crowell* v. *Danforth,* 222 Conn. 150, 156, 609 A.2d 654 (1992); see also *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 220, 435 A.2d 24 (1980).

The plaintiff presented the following evidence to the trial court regarding its endeavor to develop its own gas distribution system. Beginning in 1985, the plaintiff hired a consultant to study various issues associated with providing gas service and to prepare the necessary engineering plans. In addition, the plaintiff has investigated a potential customer base, researched potential sources of gas supply, including the defendant, and produced drawings laying out where pipelines would be required. The plaintiff also had approved an $18 million bond issue in order to construct and develop a gas system in Groton. The plaintiff altogether had expended approximately $700,000 covering legal fees, consultant's fees, and environmental impact studies. To date, however, the plaintiff still does not have a gas distribution system or any gas customers. For the plaintiff to be able to begin servicing customers would require, among other things, the construction of a gate station, building a pipeline, and obtaining a contract for a supply of gas.

Our review of this evidence leaves us unpersuaded that the trial court improperly found that the plaintiff did not "occupy and serve" its franchise area. "We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached." *Pandolphe's Auto Parts, Inc.* v. *Manchester*, supra, 222. The evidence supports the finding that the plaintiff's gas service is still conceptual in nature and that only preliminary steps have been taken to offer gas service within its franchise area. We conclude, therefore, that the trial court properly found that the defendant had a valid franchise and that it could enter the plaintiff's franchise territory without the plaintiff's consent. Accordingly, the trial court properly denied the plaintiff's request for an injunction.

The judgment is affirmed.

In this opinion the other justices concurred.