[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, having obtained an ex parte temporary restraining order, moves this court for a temporary injunction restraining the defendant Texas-Ohio Power, Inc. (hereinafter TOP) from selling electric power to two customers in Manchester, Connecticut.
Plaintiff's complaint seeks in the first count a permanent injunction against TOP and in the second count, sounding in violation of Connecticut Unfair Trade Practices Act, C.G.S. § 42-110a et seq., money damages and attorneys' fees. CT Page 11960
The court heard testimony and argument on the motion before it over a span of three days, at the end of which it terminated the ex parte restraining order on the grounds it was granted without the plaintiff filing a bond (C.G.S. §52-472) and without a showing on the papers of exigent circumstances (§ 52-473).
The facts established by the evidence are as follows: Plaintiff is an electric public service company serving 1.1 million customers in this state. Specifically, by special acts of the General Assembly and as a result of merger with predecessor companies, plaintiff is authorized to "produce, generate . . . distribute and sell within said town of Manchester electricity for the purpose of illuminating and for all other purposes for which the same may be used . . . ." 1893 Special Act No. 42 and 1883 Special Act No. 557 § 2.
TOP is a corporation incorporated under the laws of Texas and authorized to do business in Connecticut. It develops, contracts and operates cogeneration power facilities in a number of states. In 1993 at a cost of $2 million dollars it built a cogeneration facility on private land leased from defendant Central Connecticut Cooperative Farmers' Association (hereinafter COOP), and entered into an agreement to sell electricity and process steam to COOP. Later in 1993 or 1994 it redesigned the facility to provide electricity to Rogers Corporation, an abutting neighbor of COOP. None of TOP's facilities, including wires and lines extending to Rogers, are in, under or over public streets.
Plaintiff was aware of TOP constructing its cogeneration facility. It had sought to discourage COOP and Rogers from buying TOP's electricity by offering them substantial discounts on the rates plaintiff charged them.
The annual revenues plaintiff received from COOP was $300,000 to $320,000 and from Rogers $460,000. Plaintiff's total operating revenue in 1994 was $2,328,052,000 and its net operating revenue $198,228,000.
If a temporary injunction is issued, TOP can still sell steam to COOP and electricity at wholesale to CLP during the pendency of this suit. However, the evidence is TOP would lose money by such an operation. If its plant remains idle, TOP will lose in profits between $4,000 to $7,000 a month. CT Page 11961
Simultaneously with instituting this suit, plaintiff petitioned the Department of Public Utility Control for Declaratory Rulings on the question here at issue.
To prevail on a motion for a temporary injunction, plaintiff must establish reasonable certainty that it will prevail on trial on the merits of the case, irreparable injury, and lack of an adequate remedy at law. Covenant RadioCorporation v. Ten Eighty Corporation, 35 Conn. Sup. 1, 3
(1977). Such a motion involves balancing equities and lies within the sound discretion of the court. O'Connell v.Larkin, 1 Conn. App. 366, 367 (1984).
Turning first to the likelihood of plaintiff prevailing at trial, this court notes that this case presents fundamental questions as to the meaning of Connecticut statutes that regulate the electric power industry and establish the relationship between public service companies and cogeneration facilities.
Specifically, plaintiff claims that C.G.S. § 33-286(b) prohibits TOP from engaging in the electric light business. That statute provides
 "No corporation formed under this chapter shall have power to transact in this state the business of a telegraph, gas, electric light or water company, or cemetery corporation, or of any company, except a telephone company, requiring the right to take and condemn lands or to occupy the public highways of this state." (Underlining added)
TOP contends it is not engaged in the business of an electric light company because it does not have the power to take or condemn land or occupy public highways. Plaintiff counters that the clause in § 33-286(b) "requiring the right to take and condemn lands or to occupy public highways . . ." modifies "of any company" and does not relate back to "electric light company."[1]
Section 16-1(a)(8) defines an "electric company"[1] to include "every corporation, company . . . maintaining, CT Page 11962 operating . . . poles, wires, conduits or other fixtures, along public highways or streets, for the transmission or distribution of electric current for sale for light, heat or power within the state, or engaged in generating electricity to be so transmitted or distributed for such purpose, but shall not include a private power producer, as defined in section 16-243b, . . ."
Section 33-286(b) is a provision of the Stock Corporation Act, §§ 33-282 et seq. It is ambiguous as to whether a salient characteristic of an electric company has the power to condemn land or occupy public highways. Section 16-1(a)(8) appears in Title 16, Public Service Companies. It is the more authoritative and reliable definition pursuant to the canon of statutory interpretation that "[w]hen two statutes conflict . . . the more specific legislation governs over the general legislation." Wisniowski v. Planning Commission, 37 Conn. App. 303,313 (1995).
Section 16-1(a)(8) clearly defines an electric company as one that maintains poles and wires along public streets or generates electricity so transmitted or distributed. Under that definition, TOP is not an electric company.
Moreover, § 16-1(a)(8) specifically excepts a "private power producer", as defined in § 16-243b(3). Even the plaintiff concedes TOP is a private power producer.
Plaintiff argues, however, that as a consequence of TOP being a private power producer, it is obligated by §16-243a(b) to sell its electric energy only to an electric public service company. That statute, however, reads the other way around: "Each electric public service company . . . shall (1)Purchase any electric energy and capacity made available directly by a private power producer or indirectly . . . ." (Emphasis added.)
TOP contends that the plain wording of the statute obligates utilities to buy any of TOP's electric energy made available by it but does not require utilities to buy all
electric energy TOP may produce and certainly does not prohibit TOP from selling such energy to other than utilities.
Plaintiff asserts that, in any event, TOP is a "foreign" electric company", as defined by § 16-246a(1) and therefore CT Page 11963 prohibited by § 16-246c "to sell electric energy in this state to persons other than electric companies, . . . ." Section16-246a(1) defines a foreign electric company as a corporation organized under the laws of a state other than Connecticut and "authorized under the laws of the state in which organized to generate or transmit electric energy." The evidence was that TOP is organized under the law of Texas but since its certificate of incorporation was not introduced into evidence, this court cannot determine whether or not it is authorized to generate or transmit electric energy. TOP contends that the foreign electric company statutes, sections 16-246a though 16-246d, were intended to apply to out-of-state utilities and not to private power producers such as TOP.
The statutes referred to above cannot be properly interpreted by reading them individually nor by reading only their words. They must be construed as part of a pattern of statutory regulation of the electric power industry, in light of the purposes and objectives they are designed to achieve and as revealed by evidences of legislative intent.
This motion for a temporary injunction necessitates a quick decision in order to achieve its purpose of giving swift relief. Moreover, the decision must be made before the parties have had the opportunity for full discovery and fully to develop their positions. The issues are very important to the industry and will be more expertly resolved by the Department of Public Utility Control when it renders its declaratory rulings requested by the plaintiff and presently the subject of hearings before it.
Fairness to the parties and prudence induce this court to render no opinion on the likelihood of plaintiff prevailing on the merits of the case, and rather to rest its decision upon other bases for a preliminary injunction.
The legislature by special acts granted to plaintiff's predecessor companies, and by virtue of plaintiff's merger with those companies, to the plaintiff itself the right to generate electricity in Manchester. This grant constituted a franchise not conferred on citizens generally. Groton v.Yankee Gas Services Co., 224 Conn. 675, 682 (1993). As a public service company, plaintiff is required "to furnish adequate service at reasonable rates to any person within the territorial limits within which [it] has, by its charter, CT Page 11964 authority to furnish service . . .. § 16-20. All its operations and rates are subject to pervasive regulation and review by the DPUC. C.G.S. Title 16.
Because the special acts do not by their plain language make plaintiff's franchise exclusive, "courts will not find exclusivity by implication." Groton v. Yankee Gas ServicesCo., supra, 682. Nevertheless a nonexclusive franchise carries with it a right to be free from "unauthorized competition, and if a party enters a franchisee's territory without such authorization, an injunction is a proper remedy." id., 685-686.
Since this court is deferring decision on the merits of plaintiff's underlying claim and is assuming, arguendo, that plaintiff will prevail, the question still exists whether a temporary injunction should issue in this case.
Our courts have often enough enjoined the invasion of franchise rights without a showing of irreparable harm. InFitch v. New Haven. N.L. S. RR, 30 Conn. 38 (1861) a railroad company holding a limited ferry franchise for railroad use was enjoined from providing general ferry service in competition with plaintiff. In Enfield Toll Bridge Co. v. Hartford N.H.RR, 17 Conn. 40, 66 (1845) the Supreme Court said, "[an] injunction would be granted to secure the enjoyment of . . . and prevent immediate damage to a statute privilege." More specifically the court held in Manley v. Pfeiffer, 176 Conn. 540,544-45 (1979) that an injunction may issue to enforce a restrictive covenant without a showing of irreparable injury but added as a significant caveat, "so long as such relief is not inequitable."
As stated in Moore v. Serafin, 163 Conn. 1, 8 (1972), "That one has an enforceable legal right does not necessarily entitle him to the remedy of an injunction and particularly so when injunctive relief itself would be incompatible with the equities of the case." See also O'Connell v. Larkin, 1 Conn. App. 366,368 (1984).
Even when a statute authorizes an injunction to assure its compliance, a trial judge is "`not mechanically obligated to grant an injunction for every violation of law.'"Conservation Commission v. Price, 193 Conn. 414, 430 (1984). See also Burns v. Barrett, 212 Conn. 176 (1989). CT Page 11965
The instant case is hotly contested and plaintiff's success on the merits far from assured. Issuing a temporary injunction during the pendency of the suit, will cause extreme hardship to TOP. Since the evidence established it cannot profitably operate by selling steam to COOP and its generated electricity at wholesale to plaintiff, its $2,000,000 plant will have to close down.
On the other hand, TOP's continued operation hardly affects plaintiff. TOP serves two customers compared to plaintiff's 1.1 million customers. Plaintiff might lose $780,000 a year in revenue from sales to COOP and Rogers compared to its annual operating income of $2,328,052,000.
Moreover, TOP limits its operation to two adjacent property owners, without its lines crossing under, over or along public streets. As a consequence, any harm to plaintiff is more conceptual than practical. A cardinal principle is that "[i]f the injury is not substantial, equity will not interfere."
Balancing the equities, as it is entitled to do, and exercising its sound discretion (O'Connell v. Larkin, supra at 367), this court denies plaintiff's motion for a temporary injunction.