BOARD OF PUBLIC UTILITIES COMMISSIONERS OF
THE CITY OF NORWICH *v.* YANKEE
GAS SERVICES COMPANY
(15271)

Callahan, Borden, Berdon, Katz and Palmer, Js.

Argued January 12—decision released March 19, 1996

*Peter W. Benner*, with whom were *Sheila A. Huddleston* and, on the brief, *Timothy Patrick Brady*, for the appellant (defendant).

*David Silverstone*, with whom, on the brief, was *William B. Heinrich*, for the appellee (plaintiff).

CALLAHAN, J. This is an appeal from a judgment of the trial court granting a declaratory judgment and injunctive relief in favor of the plaintiff, the board of public utilities commissioners of the city of Norwich, against the defendant, Yankee Gas Services Company, enjoining the defendant from furnishing gas services to consumers in the town of Preston. The sole question raised by the appeal is whether the defendant has a right to provide gas service to customers located in Preston. The defendant claims to have acquired such

a right in 1989 when it purchased the gas assets of the Connecticut Light and Power Company (CL&P). The plaintiff argues that the defendant does not possess a right to supply gas in Preston because: (1) CL&P never had such a right and, therefore, the right could not have been included in the purchase of CL&P's gas assets by the defendant in 1989; and (2) even if CL&P did possess such a right, the defendant was prohibited by legislation from purchasing the right to provide Preston with gas service.

The authorization to provide gas service in Norwich and Preston has been legislated in a series of interrelated special acts over the last century. In 1897, the legislature incorporated the Norwich Gas and Electric Company and granted it a franchise to provide gas and electricity in the city of Norwich and the towns of Norwich and Preston.[1] 12 Spec. Acts 1049, No. 391, § 6 (1897). In 1904, the city of Norwich purchased the Norwich Gas and Electric Company's gas and electrical plants. In 1913, the legislature awarded the city of Norwich a gas and electric franchise coextensive with the 1897 franchise that had been held by the Norwich Gas and Electric Company. 16 Spec. Acts 882, No. 232 (1913). In 1919, by special act, the legislature provided that no company could "by purchase . . . acquire the right to sell or distribute gas or electricity within [the territory in which the city of Norwich has the right to sell or distribute gas or electricity] . . . ." 18 Spec. Acts 180, No. 225 (1919). Thereafter, in 1927, the legislature granted CL&P a statewide right to supply and sell gas with the proviso that CL&P "shall not have the power to supply and sell gas within the territory occupied and served by any other company now incorporated unless by consent of such other company . . . ." 20 Spec. Acts 223, No. 195, § 1 (1927).

---

[1] Until 1951, the city of Norwich and the town of Norwich were distinct municipalities. See 26 Spec. Acts 459, No. 573, c. I, § 1 (1951).

Much later, in 1951, the legislature consolidated the governments of the city and town of Norwich into the single municipality of the city of Norwich and established the board of public utilities commissioners of the city of Norwich for the purpose of controlling the production and distribution of gas, electricity and water in the city of Norwich. 26 Spec. Acts 459, No. 573, c. I, § 1, and c. XII, § 2 (1951). The legislature further provided, as it had in the 1919 special act, that no "company or person" could, "by purchase . . . acquire the right to sell or distribute gas and electricity within [the territory in which the board of public utilities commissioners of the city of Norwich has the right to sell or distribute gas or electricity] . . . ." 26 Spec. Acts 459, No. 573, c. XII, § 26 (1951). Thereafter, in 1955, by special act, the legislature granted the Mohawk Gas Services Company the power "to acquire by . . . purchase . . . and to hold, own, use, exercise, enjoy and dispose of the whole or any part of the gas property, rights, privileges, properties, securities, contracts, powers and franchises now or hereafter owned or possessed by any gas company chartered by the General Assembly of the state of Connecticut for the purchase, manufacture, production, transmission, distribution and sale of natural . . . gas and matters incidental thereto." 27 Spec. Acts 166, No. 218, § 2 (1955). The Mohawk Gas Services Company changed its name to the Yankee Gas Services Company in May, 1989.

Pursuant to the pertinent special acts noted above, the city of Norwich and the plaintiff have been providing gas service to Norwich residents, industry and businesses for nearly a century. The plaintiff presently serves over 7200 industrial, commercial and residential gas customers. It owns and operates approximately 115 miles of gas distribution mains, five gate stations and other related gas facilities. Its annual sales exceed

$9,000,000. With one minor exception,[2] neither the city of Norwich nor the plaintiff has ever provided gas services to customers in the town of Preston. Its customers, rather, are all located within the municipal boundaries of Norwich.

The plaintiff asserts that it has not supplied gas to Preston because of "the economics of extending gas facilities, Preston's rural nature and [because of] a lack of interest by Preston's residents in obtaining gas service." The plaintiff also asserts, however, that in 1994, when several potential major customers located in Preston expressed an interest in receiving gas service, the plaintiff immediately responded by taking affirmative steps to make gas service available to those prospective customers. Specifically, when the plaintiff learned in May, 1994, that the Norwich State Hospital in Preston was considering converting from oil to gas, the plaintiff installed eighty feet of unconnected pipe next to the hospital's entrance, visited the hospital site, retained consultants to review the hospital's specific needs, obtained bids for the installation of pipe and submitted a written proposal to the hospital.

In April, 1994, the defendant began installing a gas transmission pipeline from an existing line in the town of Montville through Preston in order to provide gas to the Foxwoods Casino in Ledyard, a town outside the plaintiff's franchise territory. In June, 1994, the plaintiff became aware that the defendant was installing the transmission line but believed that it was being installed to deliver gas to Foxwoods Casino only. The plaintiff subsequently learned that the defendant also intended to utilize the transmission line to service customers in Preston.

Thereafter, the plaintiff instituted this action seeking declaratory and injunctive relief to prohibit the defend-

[2] The city of Norwich did, at one point, service a gas customer whose property was partially located in the town of Preston.

ant from selling or distributing gas in Preston. The trial court granted the declaratory and injunctive relief requested by the plaintiff, and enjoined the defendant from advertising, selling or distributing gas in Norwich or Preston. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

For the defendant to prevail on appeal, we must determine that § 2 of Special Act No. 195 (1927) gave CL&P a right to supply and sell gas in Preston. We would also have to determine that the defendant was permitted to purchase that right pursuant to § 2 of Special Act No. 218 (1955), despite seemingly contrary language in § 26 of chapter XII of Special Act No. 573 (1951), which provides that no company can acquire by purchase the right to provide gas service "within the territory in which the board of public utilities commissioners of the city of Norwich has the right to sell or distribute gas or electricity . . . ." Therefore, in order to conclude that CL&P and, by purchase, the defendant had a right to distribute gas in Preston, we first would have to decide that the 1927 special act that granted CL&P a statewide right to supply and sell gas except "within the territory occupied and served by any other company," would have allowed CL&P to supply gas in Preston because Preston is a separate "territory" that is not being "occupied and served by any other company." See 20 Spec. Acts 223, No. 195, § 1 (1927). We determine that the city of Norwich and the town of Preston constitute a single, unitary "territory" as contemplated by the 1927 special act granting CL&P a statewide gas franchise, and that the trial court's conclusion that the "territory" is being occupied and served with gas by the plaintiff is not clearly erroneous. CL&P could not and the defendant consequently cannot invade the plaintiff's franchise "territory" without a direct grant

of authority from the legislature. We need not decide, therefore, whether the defendant validly could have purchased the right to supply gas in Preston, which is within the "territory" in which the plaintiff had "the right to sell or distribute gas." 18 Spec. Acts 180, No. 225 (1919); 26 Spec. Acts 459, No. 573, c. XII, § 26 (1951).

Our resolution of the question presented in this case turns on the meaning of the term "territory" in the 1927 special act granting CL&P a statewide right to supply gas. That statewide right to supply gas explicitly excluded "the *territory* occupied and served by any other company now incorporated[3] unless by consent of such other company." (Emphasis added.) 20 Spec. Acts 223, No. 195, § 1 (1927). It is undisputed that the plaintiff has, at all relevant times, "occupied and served" Norwich with gas but that it has not extended gas service to Preston. The issue, therefore, is whether Preston is a distinct "territory" unto itself that is not being occupied and served by the plaintiff or whether it is an integral part of a unitary "territory" with Norwich that is being "occupied and served" because Norwich is being occupied and served.

In 1897, when the Norwich Gas and Electric Company was incorporated and empowered to provide gas services to the city of Norwich and the towns of Norwich

---

[3] The defendant argues for the first time on appeal that the plaintiff, a municipal agency, does not fall within the definition of the term "company" within the meaning of the 1927 special act and that the plaintiff therefore cannot claim the protection afforded by that special act. The defendant seeks review under the "plain error" doctrine of Practice Book § 4185. Such review, however, is limited to those " 'truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' " *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 25, 664 A.2d 719 (1995); *State* v. *Groomes*, 232 Conn. 455, 467, 656 A.2d 646 (1995); *Scott* v. *Barrett*, 212 Conn. 217, 222, 561 A.2d 941 (1989). The defendant's belated claim of error pertaining to the definition of "company" does not meet that standard and we decline to review it.

and Preston, the legislature clearly considered the city of Norwich and the towns of Norwich and Preston together to comprise a single "territory." The 1897 special act empowered the Norwich Gas and Electric Company "to use all . . . properties in the city of Norwich and towns of Norwich and Preston, which [it] may acquire or require for the purpose of lighting streets, parks, public and private dwellings within *said territory* . . . . Said corporation is also further empowered to do every kind of work within *said territory* necessary to carry on its business." (Emphasis added.) 12 Spec. Acts 1049, No. 391, § 6 (1897). It is clear from the two references to "said territory" in the 1897 special act that the legislature used that term to include the city of Norwich and the towns of Norwich and Preston as a single, unitary whole.

In Special Act No. 225 (1919), the legislature again clearly treated the city of Norwich and the towns of Norwich and Preston as a single territory. In that special act, the legislature provided that no other company could "purchase, lease or otherwise acquire the franchises, rights or privileges of the Norwich Gas and Electric Company and by virtue thereof sell or distribute, or acquire the right to sell or distribute gas or electricity within *the territory* in which said [city of Norwich] *has the right* to sell or distribute gas or electricity, nor shall . . . any other company, by consolidation or merger with another company or by purchase or lease of its rights or franchises, have or acquire the right to sell or distribute gas or electricity within the *said territory* . . . ." (Emphasis added.) 18 Spec. Acts 180, No. 225 (1919). In those two special acts, the legislature was clearly referring to a single, unitary territory throughout which Norwich had the right to sell and distribute gas.

The defendant argues, however, that the term "territory" should not be construed to have a static, immutable meaning. The defendant contends that although

"territory" may have referred to a unitary territory in previous special acts, in the 1927 special act granting CL&P a statewide right to sell and distribute gas, "territory" meant any divisible geographical or political subdivision that did not have gas service. We are not persuaded.

The fact that the legislature had referred twice to the city of Norwich and the towns of Norwich and Preston as a single "territory" when describing the plaintiff's gas franchise is persuasive evidence that the legislature in 1927 intended the term "territory" to possess the same meaning and to include the same area. " '[T]he legislature is presumed to exercise its statutory authority with knowledge of existing statutes and with the intention of creating one consistent body of law.' " *Caron* v. *Inland Wetlands & Watercourses Commission*, 222 Conn. 269, 277, 610 A.2d 584 (1992); *Kinney* v. *State*, 213 Conn. 54, 65, 566 A.2d 670 (1989). An identical term used in 1897, 1919 and 1927 in special acts pertaining to the same subject matter should not be read to have differing meanings unless there is some indication from the legislature that it intended such a result. See *Link* v. *Shelton*, 186 Conn. 623, 627, 443 A.2d 902 (1982) (court may look to meaning given same phrase in even unrelated statutes and consider that where legislature uses same phrase it intends same meaning); 2B J. Sutherland, Statutory Construction (5th Ed. Singer 1992) § 51.02 (identical words or phrases used in related statutes given same meaning unless contrary intent appears).

"Territory" has been defined as a region or district. Funk & Wagnalls New Standard Dictionary of the English Language (1947). That definition, coupled with the previously noted language of the special acts, suggests that when the legislature assigned a territory to Norwich to distribute gas, it did not intend the assigned territory to be broken up by municipal boundaries unre-

lated to the provision of gas services. In 1927, the legislature could easily have permitted CL&P to provide gas service in any "town" or "municipality" or "distinct geographical area" that was not being "occupied and served" by another company. The legislature did not choose these terms, however, when it limited CL&P's right to deliver gas services. Rather, the legislature used the term "territory," which it had used twice in the same context to refer to the area encompassing both Norwich and Preston in which the plaintiff had the right to provide gas services. There is no reason to believe that the use of the word "territory" meant anything different in 1927 than it did in 1897 and 1919, or that "territory" in the 1927 special act was intended as a synonym for "town" or "municipality."[4]

The defendant argues that an interpretation of the term "territory" in the 1927 special act that melds Nor-

___

[4] The defendant asks us to interpret § 1 of Special Act No. 195 (1927) in light of the legislature's action in 1951. The defendant points out that Special Act No. 225 (1919), which provided that no company could purchase the right to sell gas or electricity in the plaintiff's territory, explicitly provided that it would not "impair or limit any rights, franchises or privileges heretofore granted, and now existing, relating to the manufacture, distribution or sale of electricity," while § 26 of chapter XII of Special Act No. 573 (1951), which contained the same proscription against purchasing gas or electricity rights in the plaintiff's territory, explicitly provided that it would not "impair or limit any rights, franchises or privileges heretofore granted, and now existing, relating to the manufacture, distribution or sale of *gas or* electricity." (Emphasis added.) The defendant claims that this difference impliedly indicates legislative recognition that the legislature in 1927 had granted to CL&P the right to provide gas services within the area in which the plaintiff had the right to provide gas services. We disagree. We are unable to conclude that the added explicit protection of preexisting gas franchises in 1951 provides a sufficient basis upon which to conclude that the 1927 special act had granted to CL&P the right to provide gas services in Preston. The legislative history in 1951 is silent as to whether the explicit protection of preexisting gas rights was a response to the 1927 special act, as the defendant claims, or whether it was merely a clarification of the 1919 special act, as the plaintiff claims. See Conn. Joint Standing Committee Hearings, Cities and Boroughs, Pt. 2, 1951 Sess., pp. 419–26. The legislative intent in 1927 was clear. Ambiguous legislative action in 1951 is an insufficient basis upon which to override the legislative intent in 1927.

wich and Preston into a single territory would have absurd consequences. See *State* v. *Campbell*, 180 Conn. 557, 563–64, 429 A.2d 960 (1980) (courts should avoid interpreting statutes to have absurd consequences). The defendant contends that the plaintiff's definition of territory could conceivably allow a company with a franchise territory that includes several municipalities to serve only one small area in one municipality and yet avoid competition. By so doing, the defendant asserts, a company could protect its gas franchise area from competition from any successor to CL&P's statewide right to sell and distribute gas simply by claiming that it "occupied and served" its "territory."

This argument incorrectly assumes that any service, no matter how small or insignificant, in a given territory will allow a company to claim successfully that it has "occupied and served" the territory within the meaning of the 1927 special act. We are not persuaded that a trial court could determine, as a factual matter, that a company with a gas franchise extending over several municipalities that serviced only one small area within that territory had, under any reasonable definition, "occupied and served" the territory. Several factors, including the number of customers being served relative to the number of customers in the territory as a whole and the amount of unmet demand for gas services within the territory, would have to be considered in order to determine appropriately whether an area is being "occupied and served."[5]

The trial court in this case concluded that the plaintiff's extensive provision of gas services within Norwich and its apparent willingness and ability to deliver those services to Preston if the need arose was a sufficient

[5] Moreover, the plaintiff's gas franchise is not exclusive and the legislature is at all times free to grant to the defendant or any other company a gas franchise in Preston.

basis upon which to conclude that the plaintiff had "occupied and served" the unified territory encompassing the city of Norwich and the town of Preston. At trial, there was no evidence presented to the court by the defendant as to the relative size of the served and unserved areas or as to the need or demand for gas services in the unserved portion of the territory. "Whether the plaintiff 'occupied and served' its franchise area is a question of fact . . . ." *Groton* v. *Yankee Gas Services Co.*, 224 Conn. 675, 691, 620 A.2d 771 (1993). We will not upset a trial court's resolution of a question of fact unless it is clearly erroneous. Id. We are unable to conclude from our review of the record that the trial court's finding that the plaintiff "occupied and served" the territory encompassing Norwich and Preston is erroneous.

Because the trial court's conclusion that the relevant territory comprised of Norwich and Preston is being "occupied and served" by the plaintiff is not clearly erroneous, we conclude that Special Act No. 195 (1927) did not confer a right upon CL&P to sell gas in any part of the territory in which Norwich *had a right* to sell gas, i.e., Norwich and Preston. We need not consider, therefore, whether § 2 of Special Act No. 218 (1955) empowered the defendant to *purchase* a right to sell gas in Preston or whether § 26 of chapter XII of Special Act No. 573 (1951) prevented it from doing so. Because the 1927 special act did not give CL&P the right to provide gas service in Preston, the defendant could not have purchased such a right from CL&P, even if not prevented from doing so by § 26 of chapter XII of Special Act No. 573 (1951).[6]

---

[6] Even if we had concluded that Preston is a separate entity and that Special Act No. 195 (1927) granted CL&P the right to supply gas in Preston, we nevertheless would conclude that Special Act No. 218 (1955) did not give the defendant the right, by the purchase of CL&P's rights, to supply gas in Preston. Only four years earlier, the legislature had made clear that no company could purchase the right to sell gas "within the territory in

The judgment is affirmed.

In this opinion the other justices concurred.

which the [plaintiff] has the right to sell or distribute gas or electricity." 26 Spec. Acts 459, No. 573, c. XII, § 26 (1951). The defendant claims that the 1955 special act repealed the 1951 special act by implication because the legislature granted the defendant a general authority to purchase the right to provide gas services from other gas companies. We have previously held that a "special and local statute, providing for a particular case or class of cases, is not affected by a statute general in its terms, broad enough to include cases embraced in the special law, unless the intent to repeal or alter is manifest"; *Metropolitan District* v. *Barkhamsted,* 199 Conn. 294, 305, 507 A.2d 92 (1986); and that "[r]epeal by implication will not be inferred if legislative acts can be reconciled and given concurrent effect." *Putala* v. *DePaolo,* 225 Conn. 378, 388, 623 A.2d 989 (1993). In this case, there is no manifestation of an intent by the legislature to repeal the 1951 special act and we can give both the 1951 and 1955 special acts compatible, concurrent effect by treating the 1951 special act as a specific statutory exception to the general grant of authority to the defendant.